TOM C. HUTCHINSON, administrator of estate of MARGARET ANNE HUTCHINSON, deceased, appellant, v. DES MOINES HOUSING CORPORATION et al., appellees.

No. 49246.

(Reported in 84 N.W.2d 10)

1122

JUNE 26, 1957.

Jones, Rockwell & Oliver, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee Des Moines Housing Corporation.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee Fort Des Moines Community Services, Incorporated.

Hallagan, Irish & Burt, of Des Moines, for appellee Bruno Ceretti.

PETERSON, J.—This action involves the ruling of the trial court on motions to strike parts of plaintiff's petition, filed by the three defendants. The motions were all sustained. The case comes to us under interlocutory appeal granted in accordance with R. C. P. 332.

During World War II the United States Government erected a large number of houses and some commercial and recreation buildings for use of training personnel in the Fort Des Moines

area. Shortly after the war the houses and buildings were vacated. A corporation known as Des Moines Housing Corporation was organized and the corporation rented all the property from General Services Administration of the United States Government. It rerented the houses to veterans, and rented the other buildings for commercial and recreational purposes. Another corporation was formed known as Fort Des Moines Community Services, Inc., which was in charge of recreational services for the area. These were centered in a recreation building described as Building 318. This building was under the joint control and management of the two corporations. Des Moines Housing Corporation rented a part of the building to defendant Bruno Ceretti, for tavern purposes. The Housing Corporation rented apartments in the building on the second floor as living apartments. One apartment was rented to the Tedrow family consisting of four members. On the night of February 15-16, 1956, Margaret Anne Hutchinson, the daughter of plaintiff, was visiting the Tedrow family and stayed all night. While the family and Margaret were asleep in the apartment, and early in the morning of February 16, a terrible tragedy occurred. The recreation building caught on fire and was completely destroyed and Margaret Anne and the four members of the Tedrow family were burned to death.

Plaintiff was appointed administrator of Margaret Anne's estate and on December 12, 1956, a petition was filed claiming damages for the death from the two corporations and Bruno Ceretti. Division I of the petition contained the customary allegations for damages, outlining in substance the facts as above stated and alleged reliance upon the doctrine of res ipsa loquitur. Defendants filed no motions as to this division. Division II is based on the doctrine of specific negligence. The first seven paragraphs are the same as alleged in Division I. The questions involved herein pertain to paragraph 8 and subparagraph (a) of paragraph 9. These two paragraphs, with pertinent other allegations, are as follows:

"7. * * * That at the time of said fire, the instrumentalities that caused the said fire were under the joint and exclusive control and management of the defendants.

"8. That as a part of the services to be rendered by Des Moines Housing Corporation to the Fort Des Moines Housing Area, was the conducting and maintaining of a Fire Department, and that said Des Moines Housing Corporation did furnish, conduct, and maintain a Fire Department in the Fort Des Moines Housing Area from 1946 to about December 1, 1955; and after December 1, 1955, said Des Moines Housing Corporation had an agreement with the Bloomfield Township Voluntary Fire Department for services of rendering fire protection to the Fort Des Moines Area. That the Des Moines Housing Corporation and the Fort Des Moines Community Services Incorporated, jointly furnished electricity and heat to the occupants of the Fort Des Moines Housing Area, and in said furnishing of said utilities mentioned herein, it was the duty of the Des Moines Housing Corporation and Fort Des Moines Community Services Incorporated to maintain adequate inspection so as not to' permit the Fort Des Moines Housing Area, and particularly Building No. 318, to become a fire hazard, by adequate periodic inspection and maintenance of electrical repairs, and their failure was such negligence that contributed to the said injury and subsequent death of the plaintiff. [This paragraph was stricken.]

"9. Plaintiff alleges that the fire as above related and the subsequent death, were directly and approximately caused by the negligence of the defendants, jointly and severally in the following respects.

"(a) By failing to conduct and maintain a fire department and adequate fire protection and inspection. [This section was stricken.]

"(b) By allowing pennies to be placed in the fuse sockets thereby allowing an overload of electricity to flow through the wires and thus creating a dangerous condition and a fire hazard.

"10. That the negligence of the defendants was the proximate cause of the fire and the death of the deceased, as a result thereof."

Des Moines Housing Corporation filed motion to strike paragraph 8 as an opinion and conclusion and as argumentative and immaterial; and alleging that it constitutes improper and un-

necessary matter and that no breach of contract between moving defendant and any other defendant or Bloomfield Township Fire Department was pleaded, and that neither plaintiff nor plaintiff's decedent had a right of action in tort by virtue of any agreement.

Fort Des Moines Community Services, Inc., filed motion to strike paragraph 8 and subparagraph (a) of paragraph 9 on the grounds that same constitute an opinion and conclusion, and are improper and argumentative in character; that an attempt is made by plaintiff to cast a burden on defendant not recognized in law and not a proper allegation of negligence, and that the facts alleged do not establish any duty on the part of defendant.

Motion to strike was filed by defendant Bruno Ceretti as to subparagraph (a) of paragraph 9 for the reason that no facts are alleged establishing any duty on the part of Ceretti to conduct and maintain fire protection or a fire department and that said allegation is improper, unnecessary, a conclusion, and argumentative in character.

The trial court sustained all three motions to strike.

██ ██ I. We will first consider the motion to strike of defendant Ceretti. It pertains only to paragraph 9(a), which alleges Ceretti, with the other defendants, was negligent "by failing to conduct and maintain a fire department and adequate fire protection and inspection." This is a conclusion, and plaintiff made no allegations of fact concerning Ceretti on which to base this conclusion. In order to constitute proper and effective pleading a conclusion concerning negligence must be based upon proper and pertinent facts. Taylor County Farm Bureau v. Board of Supervisors, 218 Iowa 937, 252 N.W. 498; Benton v. Morningside College, 202 Iowa 15, 209 N.W. 516; 71 C.J.S., Pleading, sections 17 and 18; Townsend v. Armstrong, 220 Iowa 396, 260 N.W. 17; Andrew v. Hartford Accident & Indemnity Co., 207 Iowa 652, 223 N.W. 529, 535. Ceretti was a tenant in the recreation building renting a small section in which he conducted a tavern. It is impossible to conceive of any duty or obligation on his part to maintain a fire department on behalf of his cotenants, the Tedrows, or anyone in privity through them. Rule 113, R. C. P., provides: "Improper

or unnecessary matter in a pleading may be stricken out on motion of the adverse party." The ruling of the trial court was proper under this rule as well as under the citations set out.

II. The first section of paragraph 8 is a statement to the effect that part of the services to be rendered by Des Moines Housing Corporation was maintenance of a fire department. There is no allegation concerning any agreement to this effect, either oral or written. Plaintiff's position seems to be based on the fact that the Housing Corporation did maintain a fire department from 1946 to 1955. Plaintiff then alleges that from and after December 1, 1955, the Housing Corporation had an agreement with Bloomfield Township Voluntary Fire Department for rendering fire protection to the Fort Des Moines area. There is no allegation of failure to act in connection with the fire. In paragraph 9(a) plaintiff alleges the conclusion that defendants failed to maintain an adequate fire department. The peculiar part of the situation is that in paragraph 8 plaintiff alleges fire protection was furnished by one method or another up until the time of the catastrophe. In 9(a), somewhat in contradiction as to this statement of fact, plaintiff alleges a failure to conduct and maintain a fire department. The fact that the building was destroyed by fire is not within itself evidence of negligence. There seems to be a suggestion that some unperformed duty rested upon the Housing Corporation because of the change from maintenance of a fire department, to an agreement with Bloomfield Township Voluntary Fire Department to render fire protection to the area. This suggestion is not effective to justify retention of said section of paragraph 8. It is probable that 75 to 80% of the villages, towns and small cities of Iowa are protected by the maintenance of volunteer fire departments. It is a generally recognized and acceptable fire protection service. As to defendant Ceretti, paragraph 9(a) was stricken because no facts were alleged on which to base the conclusion. It is equally fatal when no pertinent, relevant, nor material facts are alleged to support the conclusion as to negligence. Rule 113, R. C. P.; Johnstone v. Johnstone, 226 Iowa 503, 512, 284 N.W. 379, 384; Boyd v. Christiansen, 229 Iowa 1, 3, 293 N.W. 826, 828; Cresswell v. Wainwright, 154 Iowa 167, 134 N.W. 594; Iowa Coal Washing

Co. v. Consolidation Coal Co., 204 Iowa 202, 215 N.W. 229, 231. The ruling of the trial court as to motion to strike filed by Des Moines Housing Corporation concerning the first section of paragraph 8 and paragraph 9(a) was correct.

III. We desire to give the second section of paragraph 8 separate consideration. The allegations of facts are: In Paragraph 7, not stricken: the instrumentalities that caused the fire were under the joint and exclusive control of defendants; Paragraph 8, stricken: Des Moines Housing Corporation and Des Moines Community Services, Inc., furnished the electricity and heat for the Tedrow apartment; failed to maintain electrical repairs and failed to inspect the facilities; and as a related statement of fact, not stricken, the statement in paragraph 9(b) that defendants allowed pennies to be placed in the fuse sockets. The conclusions based on these facts are: failure of a duty to properly maintain furnished facilities; the pennies in the fuse sockets created an overload of electricity and, therefore, a dangerous condition and fire hazard; such negligence contributed to injury and death of plaintiff's decedent. (By typographical error the allegation states "death of the plaintiff.")

An allegation of a duty to be performed is based on the premise that there is either an agreement to perform the duty or there is an obligation for its performance under operation of law. 28 C. J. S., Duty, page 597. We quote: "Legal duty. * * * has been defined as an obligation arising from contract of the parties or the operation of law; that which the law requires to be done or forborne to a determinate person or to the public at large, and is correlative to a right vested in such determinate person or in the public." See also Riddell v. Peck-Williamson Heating & Ventilating Co., 27 Mont. 44, 69 P. 241, 243; 71 C. J. S., Pleading, section 18.

In giving consideration to the field of landlord and tenant we should consider the two present-day types; one is the landlord who simply rents a house or a store to a tenant and that is the extent of the agreement. In these modern days a new type of landlord-and-tenant relationship has arisen; that is where the landlord maintains an apartment house and for additional consideration furnishes utilities and facilities to the

tenant in addition to living quarters. From the allegations of plaintiff's petition this is the relationship involved herein. Plaintiff alleges defendants agreed to furnish electricity and heat for the apartment in addition to occupancy. In the first type of tenancy the tenant has exclusive possession and control of the premises. In the second type the landlord retains some control for the purpose of maintaining the utilities or facilities. 52 C. J. S., Landlord and Tenant, section 417b(6), f(4); 32 Am. Jur., Landlord and Tenant, section 750; Stewart v. Raleigh County Bank, 121 W. Va. 181, 2 S.E.2d 274, 122 A. L. R. 161. Since heat and electricity were part of the rental arrangement for which the defendants were paid, in the absence of a specific agreement to the contrary, they owed a duty concerning these facilities. They had a limited control of the apartment as to the instrumentalities conveying the heat and light, and had an obligation to see that they were in proper repair, and not in such condition as to be the basis for the catastrophe, if such were the facts of the case. 52 C. J. S., Landlord and Tenant, sections 417 and 418; 32 Am. Jur., Landlord and Tenant, section 750; Glidden v. Goodfellow, 124 Minn. 101, 144 N.W. 428, L. R. A. 1916F 1073; Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527.

We have not heretofore considered the specific question involved herein. It has been considered in other jurisdictions and some weight of authority has been established. In the Minnesota case of Glidden v. Goodfellow, supra, plaintiff was an employee in the store of the tenant. A part of the tenancy agreement was that the landlord should heat the store. Plaintiff alleged the landlord, Goodfellow, failed to heat the store and she caught a severe cold which developed into tuberculosis, causing permanent disability. She sued for twenty-five thousand dollars. The case was before the Supreme Court in a manner somewhat similar to the case at bar. The use of demurrers was in effect in Minnesota. Defendants demurred to plaintiff's petition. The trial court sustained the demurrer. The Supreme Court reversed, stating in part at pages 102, 105 of 124 Minn., pages 428, 429 of 144 N.W., as follows: "Defendant * * * covenanted and agreed to supply the premises with heat during the cold weather season from a heating plant owned and oper-

ated by him. The tenant took possession under this contract, and the covenant to heat the same was in part the consideration of the rents agreed to be paid for the use of the premises. * * * An agreement to keep the premises properly heated, and the negligent failure to perform the same, cannot on principle be differentiated from the case of failure to keep in repair. * * * The contract created an implied legal duty on the part of the landlord toward the employees to keep and perform the same, and a negligent violation thereof ought to vest in them the right of action against him, if such neglect be the proximate cause of the injury sustained and the employees be not guilty of contributory negligence, or assume the risks incident to continuing in the employ of the tenant in the unheated premises."

The case of Housing Authority of Birmingham Dist. v. Morris, supra, was an action for damages by a tenant renting an apartment from the Housing Authority. Facilities were to be furnished by the landlord and this case pertains to the furnishing of water. Some defect had arisen in the hot-water heater and when the tenant turned on his cold water, scalding hot water came out and he was seriously injured. He recovered damages and the Supreme Court affirmed the case. We quote pertinent excerpts from the decision (244 Ala., page 561, 14 So.2d, page 529): "Each of said counts [of the petition] aver in substance and legal effect that the defendant engaged to supply plaintiff's apartment with water and retained possession and control of the water system in said apartment house to that end, and its servants, agents or employees while acting within the scope of their employment negligently caused hot water to be propelled through the cold water pipes into the commode in plaintiff's apartment, and as a proximate consequence plaintiff received his said injuries—[Quoted at pages 566, 567 of 244 Ala., pages 534, 535 of 14 So.2d] 'It is a corollary of the maxim "Sic utere tuo ut alienum non laedas" that everyone shall investigate, inspect, and test the instrumentalities maintained by him, guided in so doing by the knowledge that common experience offers with respect to the possibility of peril. Every peril, it is safe to say—including such as are termed latent or hidden—need not be discovered; for no man is an insurer of the safety of others. But if common experience

has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom. * * *' * * * As we have stated before, there was no evidence showing that plaintiff had notice or knowledge that it was dangerous to use the hot water tank without the thermostat. In fact he had a right to rely on the defendant to furnish reasonably safe appliances."

We are of the opinion plaintiff has alleged enough in his petition, together with the second section of paragraph 8, as to facts and as to the conclusions therefrom, that he should be granted the right to present his proof thereon. Questions as to existence of an agreement to furnish heat and electricity, and whether or not there were defects which had not been corrected by defendants as a matter of duty, and whether such defects were the proximate cause of the fire and plaintiff's decedent's death are not involved in this appeal. These are matters of proof, similar to statement in Glidden v. Goodfellow, supra, "We dispose of the case upon the single question [demurrer] * * *. All other questions must be determined when issue is joined and the cause tried." Page 106 of 124 Minn., page 430 of 144 N.W.

IV. Appellant's citations of authorities are not of assistance in connection with the issues involved. In fact, several citations support the position of appellee Housing Corporation on its motion to strike. The two citations of appellee Community Services, Inc., are not applicable to the issues herein. Harter v. Colfax Electric Light & Power Co., 124 Iowa 500, 100 N.W. 508, pertains to responsibility of an electric light company and not to a landlord and tenancy situation. Sutcliffe v. Fort Dodge Gas & Electric Co., 218 Iowa 1386, 257 N.W. 406, is a case based exclusively on res ipsa loquitur and involves no questions similar to case at bar.

Our references to the first and second sections of paragraph 8 are to the first and second sentences of the paragraph.

The ruling of the trial court sustaining motions to strike the first section of paragraph 8 and subparagraph (a) of paragraph 9 is affirmed. The ruling as to the second section of para-

graph 8 is reversed with instructions to the trial court to enter an order reinstating said section of paragraph 8 in Division II of plaintiff's petition.—Affirmed in part and reversed in part.

All Justices concur.