Vernon Tedrow, as administrator of estate of Margaret Tedrow, deceased, appellant, v. Des Moines Housing Corporation et al., appellees.

No. 49325.

(Reported in 87 N.W.2d 463)

JANUARY 14, 1958.

REHEARING DENIED MARCH 14, 1958.

Jones, Rockwell & Oliver, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee Des Moines Housing Corporation.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee Fort Des Moines Community Services, Incorporated.

Hallagan, Irish & Burt, of Des Moines, for appellee Bruno Ceretti.

THOMPSON, J.—Plaintiff's action is brought as administrator of the estate of his deceased wife, Margaret Tedrow, who met her death in a fire on the early morning of February 16, 1956. Four other persons, including Margaret Anne Hutchinson, were

also in the second floor apartment of the Tedrows in what is known in the record as Building 318, owned by the General Services Administration of the United States Government and located in the Fort Des Moines area. All of these people also lost their lives in the fire.

We have had occasion to consider some features of a case arising out of the death of Margaret Anne Hutchinson in this same tragedy. See Hutchinson v. Des Moines Housing Corp., 248 Iowa 1121, 1123, 1124, 84 N.W.2d 10, 11. Many of the pertinent facts concerning the leasing and management of the building and the relation of the various defendants are there set forth, and we do not repeat them here.

At the close of plaintiff's evidence in the case at bar the trial court sustained motions by each of the defendants for directed verdicts. There were certain cross-petitions of the defendants against each other, seeking to shift the liability if liability was found, and a cross-petition of the defendant Bruno Ceretti against the defendant Fort Des Moines Community Services, Inc., claiming damages for the destruction of certain personal property which he owned and used in the conduct of a tavern on the first floor of Building 318, as a tenant. When the motions for directed verdict were granted as against the plaintiff, all cross-petitions were dismissed with prejudice, and we have no concern with them here. The appeal is by the plaintiff from judgment upon the peremptory verdicts.

Five errors are assigned for reversal: 1, the court erred in striking subparagraph (a) of paragraph 8 (a specification of negligence) from plaintiff's petition; 2, 3 and 4, the court erred in granting the motions of each of the three defendants for directed verdict; and 5, the court erred in directing verdicts in favor of the defendants on the ground that the negligence of defendants was not shown to be a proximate cause of plaintiff's damage so as to engender a jury question. The last four assignments raise substantially the same questions, and will be considered together in Division I following.

I. Plaintiff's petition was in two counts. The first count relied upon res ipsa loquitur. The second pleaded three specific negligences, of which the first two were stricken upon motion of

the defendants. Error is predicated upon the ruling striking the first specification, subparagraph (a) of paragraph 8, and this assignment will be considered in a later division of this opinion. No error is claimed upon the ruling striking subparagraph (b) of the same paragraph, and we give it no further attention. The ruling left only one specification, subparagraph (c), which we quote herewith: "By allowing pennies to be placed in the fuse box thereby allowing an overload of electricity to flow through the wires."

In our view of this case, the evidence which plaintiff thinks supports the application of the res ipsa loquitur doctrine and that which makes a jury question on the specific charge of negligence remaining in Count II is the same. It appears that after the fire a fuse box was found in the ruins of the tavern portion of the building, which had contained nine fuse wells or sockets. The box was badly burned; but in each of three wells was found a one-cent copper coin. Assuming that these coins had been there before the fire, the plaintiff builds his entire case upon them. He argues that pennies are commonly placed in electric sockets to replace fuses; that they are dangerous when so used, since a fuse will blow out when the circuit is overloaded, but a penny will not; and so the insulation may be burned from the electric wires and a short circuit with a very hot electric spark may result. There is some evidence that when the fire was first discovered it was in the tavern portion of the building. There is also evidence from two experts that placing a penny in the fuse well to replace a fuse constitutes a fire hazard. More reference to the testimony of these experts will be made later.

■■ The mere happening of a fire with the resultant injuries raises no presumption of negligence. Dodge v. McFall, 242 Iowa 12, 15, 16, 45 N.W.2d 501, 502, and cases cited. The burden is of course upon one who seeks to recover because of the negligent kindling of a fire to prove such negligence, and this is equally true whether he relies upon the evidentiary doctrine of res ipsa loquitur or upon specific acts. This is elementary. So the plaintiff here carried the burden of making a prima-facie case.

■■ We said in Dodge v. McFall, supra, page 14 of 242 Iowa, page 502 of 45 N.W.2d: "To entitle a plaintiff to the

benefit of the doctrine of res ipsa loquitur he must establish the way the injury occurred as well as defendant's control of the instrumentalities involved." Since plaintiff's case here goes no further than to show that there were coins in the well sockets which created a fire hazard, we must determine whether he has sufficiently shown the way the injury occurred. The doctrine of res ipsa loquitur does not avail him unless he has made such a showing. A much cited, because it is thorough and well considered, case on this question is Highland Golf Club v. Sinclair Refining Co., 59 F. Supp. 911. There Judge Graven of the United States District Court for the Northern District of Iowa went into the question of the application of the doctrine to fire cases generally. In the course of its discussion the court said, at page 919: "Apart from statute, the Courts have been very reluctant and sparing in drawing an inference of negligence from the starting of a fire." This, we think, is the general rule. There are of course cases involving fire damage in which the doctrine has been held available. Our own recent case of John Rooff & Sons, Inc., v. Winterbottom, 249 Iowa 122, 133, 134, 86 N.W.2d 131, 138, 139, is one of these. Here the use of an electric torch from which sparks fell above the spot where the fire started was held sufficient evidence of the "foundation facts", the manner in which the fire started, not only to bring the res ipsa loquitur doctrine into play but to support another count of the petition which claimed specific negligence, so far as to require a jury determination.

But we are unable to find sufficient evidence of the manner in which the fire was kindled here to say that the requirement has been met. Giving the evidence the most favorable interpretation in favor of the plaintiff that it will reasonably bear, as we must, we are unable to find it creates a jury question as to what caused the injury. Orr v. Des Moines Electric Light Co., 207 Iowa 1149, 1155, 222 N.W. 560, 562. We may infer that the pennies were in the fuse wells before the fire, and, although the question becomes more doubtful, that wires led from these sockets. But we do not know that these wires were ever overloaded; that they became heated, or cast off sparks, or made a short circuit in any way. Again quoting from the Highland Golf Club case, supra, at page 919 of 59 F. Supp.: "The

courts recognize that fires are frequent occurrences and in a great many cases without any negligence on the part of anyone." While the plaintiff has shown a condition which could possibly have caused a fire, it is only conjecture that it did so. There is no evidence that the wires leading from the fuse box became overheated, or that they led to the point where the fire started, which is itself undisclosed except that it was somewhere in the tavern. The plaintiff's experts who were called to show that the use of coins in place of fuses makes a fire hazard would not say that the fire in question was caused by this condition. Zack Cook, employed in the office of the Iowa State Fire Marshal for sixteen years, told of various other things that cause fires, such as "electric wiring, overheated motors, overloads and smouldering cigarettes depending on whether there is paper in a wastepaper basket." He said that sometimes paper may smoulder for some time before it breaks out in flame. Lloyd Stith, an electric inspector for the city of Des Moines, said that whether the fuse box caused the fire or the fire destroyed the fuse box would be "just a guess." He also said that a short circuit might be caused by something other than a defective fuse; and that without knowing the nature of the short, and the circumstances and the material that may have been close by, there is no way of telling whether a fuse had anything to do with it or not.

Many things, among them accumulations of wastepaper in buildings, are known fire hazards, and are so considered by fire departments. Yet can we assume that, if such an accumulation of paper in the Ceretti tavern had been shown here, without anything more, it would have furnished the foundation facts for the application of the res ipsa loquitur doctrine? The question answers itself. In Starks Food Markets, Inc., v. El Dorado Refining Co., 156 Kan. 577, 582, 134 P.2d 1102, 1105, the Kansas Supreme Court used this apt language: " 'It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, or that the injury was caused by some act incident to the control of the instrumentality.' "

In this case, if we assume there was evidence from which an inference might be drawn that circuits led from the fuse

wells in which the pennies were found, we are still without anything to tell us where these circuits went, or whether they became overheated, or whether there was inflammable material near them. There is no evidence of the amount of the electric load required at the time the fire originated; that is to say, whether it would have been an overload on the particular wires leading from the sockets in which the pennies were found. The evidence to establish the manner in which the injury occurred need not be conclusive; it may be circumstantial; but it must arise above mere speculation. We are shown here something which, under certain circumstances, might be a fire hazard; as to whether those circumstances existed the record is wholly silent. The foundation facts for the application of the res ipsa loquitur doctrine are lacking.

 Much the same reasoning applies to the matter of specific negligence pleaded in paragraph 8(c). This also relies upon the three coins in the fuse wells. In order to make a jury question upon negligence, when the evidence is circumstantial, it must be such as to make the theory of the causation reasonably probable, not merely possible, and more probable than any other hypothesis based upon such evidence. Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, 43, 44, and cases cited. We applied the rule in Roller v. Independent Silo Co., 242 Iowa 1277, 1285, 49 N.W.2d 838, 843. This case is cited and relied upon by the plaintiff. The facts are different. Here the defendants had damaged electric wiring leading into plaintiff's barn, and a fire broke out at or very near the point of damage. We have nothing in the case at bar to show us that the fire originated along the lines of the wires connected to the coin-fortified fuse wells. The most we are told is that the fire was first discovered in the tavern portion of the building. But it may have originated from any one of many causes. Fires occur frequently, and often without negligence on the part of anyone. The law rightly requires one who claims such negligence to prove it, by something which makes the theory reasonably probable. We find nothing here more than a possibility. The outbreak of the fire at the point where the fire hazard would be expected to operate, so important in Roller v. Independent Silo

Company and John Rooff & Sons, Inc., v. Winterbottom, both supra, is an element entirely lacking in the case at bar.

■■ II. It remains to consider plaintiff's first assigned error. On motion of the defendants, the court struck from paragraph 8 of Count II of plaintiff's petition this allegation of negligence: "(a) By permitting the said premises to become and remain out of repair and in an unsafe and dangerous condition." It is now urged that this was error, and plaintiff was prevented from establishing facts which might have shown negligence. The defendants say the allegation was properly stricken because it was a conclusion unsupported by any pleaded facts. Both sides cite Hutchinson v. Des Moines Housing Corp., supra. We there held that conclusions pleaded in specifications of negligence are proper only when based upon factual allegations. See discussion and authorities cited at page 1126 of 248 Iowa, page 13 of 84 N.W.2d. The allegation stricken in the instant case seems lacking in factual support; but without so holding, we think it clearly appears the ruling of the court was in any event without prejudice to the plaintiff. Ordinarily prejudice will be presumed from an erroneous ruling, and we consider it so here. But we think lack of prejudice clearly appears.

The appellant, in his brief and argument upon this point, urges upon us the same matters raised by the question of the coins in the fuse wells. He says: "After the fire, a fuse box in the tavern portion of the building was discovered which contained three pennies in the fuse sockets." The argument then goes on to cite authorities holding that when the landlord agrees to furnish utilities and is negligent in the performance of such contract and the tenant is injured thereby, liability exists. The argument concludes: "Common experience has taught us that when you place a penny behind a fuse, the safety feature of the fuse no longer operates and it is very likely that a fire will result." The failure to keep the premises in repair and permitting them to remain out of repair and in a dangerous condition alleged in (a) of paragraph 8 quite evidently referred to the same matter of the pennies in the fuse wells more specifically pleaded in (c) of the same paragraph, which was not stricken. In addition to this, the case appears to have been fully tried

and all ascertainable facts concerning the fire developed. Lack of prejudice affirmatively appears.—Affirmed.

PETERSON, C. J., and BLISS, GARFIELD, OLIVER, and WENNERSTRUM, JJ., concur.

LARSON and HAYS, JJ., dissent.

SMITH, J., takes no part.

LARSON, J. (dissenting)—I am unable to concur in the conclusion of the majority that the specification of negligence that the defendants allowed "pennies to be placed in the fuse box thereby allowing an overload of electricity to flow through the wires" was nothing more than mere speculation as to the cause of the fire. I cannot agree that, if proven, these facts would not give rise to a fair inference that such acts were the actual cause of the fire.

I could think of few facts which would create a greater inference of causation. One who eliminates the protection of fuses in an electrical wiring system invites trouble, usually a fire. The need for fuses in the system here was clear. Indeed, without that protection, service to that building would not have been permitted. It is necessary protection universally recognized for the protection of life and property. It protects against overloads for various reasons, such as crossed wires, stuck motors, or too many active appliances on one system. When the load becomes too great for the wires used in the system, the fuses burn out and cut out that circuit. Too much current was being used here for safety, as indicated by the installation of the pennies in the fuse box. The installer, as well as the persons responsible, must have been aware of this overload, and for that reason attempted to short out or by-pass the fuse protection by the installation of the pennies.

Could anyone think of a greater fire hazard than the placing of pennies behind fuses in order to activate a circuit which, due to an overload on the system, has destroyed the necessary fuse? Overloaded lines are known to get hot, burn the insulation from the wires, and ignite any inflammable substances near by. To

knowingly maintain such a condition seems not only negligence but approaches criminal negligence.

The fact that the very thing that could be expected to happen did happen, i.e., fire in the portion of the building served by the circuits that were shorted out, could lead to no other conclusion but that the alleged facts plus their fair inferences generated a jury question, at least as to whether such acts of negligence were the actual cause of the fire and disaster. If ever facts speak for themselves, these do—loud and clear.

HAYS, J., joins in this dissent.