ELLING J. ELLINGSON, administrator of estate of Kenneth Mc-Collough, appellant, v. HAROLD KRAMER, appellee.

No. 51105.

(Reported in 125 N.W.2d 777)

JANUARY 14, 1964.

1258

[black redaction box]

Guthrie & Blackburn, of Webster City, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

SNELL, J.—This is an action for damages following the death of a 15-year-old boy who perished in a fire in a building owned by defendant. Plaintiff's case has been prosecuted with resourcefulness and skill but is lacking in evidentiary support. Speculation and conjecture will not take the place of evidence.

Plaintiff is the administrator of the estate of a 15-year-old unemancipated son of Robert D. and Neva McCollough.

On February 19, 1961, defendant, Harold Kramer, was the owner and operator of a truck stop consisting of a station, cafe, bunkhouse and shop. The bunkhouse and shop were in a quonset type building separate from the other buildings. The bunkhouse area consisted of two stories. The first floor contained a trucker's lounge, shower, utility room, living quarters for defendant's family, and two stairways. On the second floor there were seven bedrooms, a hall, stairway, an unfinished bath and a storage room. Defendant and his wife have eight children. Some of the upstairs bedrooms were used by their sons. Three employees were also housed upstairs. Other bedrooms were available to and were used by transient truck drivers.

Robert D. McCollough, father of decedent, is a mechanic. He had formerly been employed by defendant but had been unemployed for a few weeks on February 19, 1961. As a part of his compensation when he was working he had free parking for his trailer house and water and electricity therefor. He testified that he "presumed" his tenancy had been terminated but he, his wife and children were still living in the trailer house parked on defendant's premises. Neva McCollough, his wife, remained in

defendant's employ as night waitress and cook in the cafe. She was on duty the night of February 18 and 19.

Kenneth Davis had been employed by defendant as a mechanic for three or four weeks. He slept in the bunkhouse. About a week prior to February 19 while smoking he had set fire to his bedding. Defendant admonished him against smoking in bed.

Davis did not drink while working. There is no evidence that defendant knew anything about Davis' drinking habits. During the evening of February 18 and continuing into the early hours of February 19 Davis was drunk. Mr. McCollough had been loafing around the truck stop since morning. Sometime after midnight he first observed Davis in the cafe. About 3 a.m. Davis asked McCollough to help him to the bunkhouse. McCullough did so as Davis obviously needed help. On the way to the bunkhouse Davis gave McCullough two bottles of beer from his car and lit a cigarette. With some difficulty, and McCollough's help, Davis got through the door into the bunkhouse and started toward the stairs. He had a cigarette in his hand. McCollough testified that he watched for a moment and then returned to the cafe. He could not say where Davis went.

Defendant, Kramer, had gone to bed in his own quarters in the bunkhouse about midnight and knew nothing about these activities.

On February 18 the electric power from the regular utility lines failed. Defendant's auxiliary electric plant did not serve McCollough's trailer house. Because of the power failure the oil furnace heating the McCollough trailer house would not work. To escape the cold McColloughs took their children to their grandparents' home in Webster City. Kenneth McCollough, their 15-year-old son, plaintiff's decedent, was told to stay in Webster City "but he changed his mind" and returned to the truck stop.

During the evening of February 18 decedent, together with Mervin Kramer, a son of defendant, double dated with two young girls. The boys had liquor with them and drank during the evening. The boys took the girls home about midnight and then returned to the cafe. They met a young man named Dar-

rell Hetland. Decedent told his parents he was going to spend the night at the Hetland home in the country. Their plans did not mature. After some time in the cafe the three boys left. They rode around and finished a fifth of whiskey.

About 3 a.m. the three boys went to bed in defendant's bunkhouse. One of the boys was smoking when they entered the bunkhouse, but put out his cigarette. Mervin Kramer and Larry Kramer, his brother, regularly occupied an upstairs corner room next to the storage and shop area. This room had an extra bed. The three boys joined Larry who had retired earlier. Apparently no one, except the four boys in the room, knew that Darrell Hetland and Kenneth McCollough were in the building.

About an hour after Mr. McCollough had helped Davis to the bunkhouse Mr. McCollough was sitting in the cafe with two other men. A fire was reported by a man running in the door. The bunkhouse was on fire. The men attempted rescue of the occupants. Defendant, who had been sleeping in his downstairs apartment, heard someone "holler 'fire'!" He went upstairs and "made one round in the hallway and woke everybody up."

The four boys, asleep in the corner room, were wakened by the fire or the noise. There was smoke and fire in the hallway. With very little effort they broke through a wall into the storage and shop area. Mervin and Larry Kramer and Darrell Hetland escaped through this hole without serious injury. Kenneth McCollough went into the hall and perished. Kenneth Davis and a granddaughter of defendant also died in the fire.

Kenneth McCollough, the decedent, had a medical history of asthma and shortness of breath. The cause of his death was given as suffocation and massive third-degree burns. Because of our conclusion on other matters we need not consider matters that may have contributed to his failure to escape with his companions.

Both sides rested after the introduction of plaintiff's evidence.

Extensive and comprehensive motions to strike and to direct a verdict were made and considered.

The trial court in a carefully considered opinion expressed

doubt as to the sufficiency of the evidence to support a verdict but submitted to the jury three main issues.

These issues were: the status of decedent as an invitee; was defendant negligent with respect to Davis' conduct; and if so did Davis cause the fire.

The jury returned a verdict for plaintiff. On motion of defendant for judgment notwithstanding the verdict, the verdict was set aside. Plaintiff appeals.

I. Plaintiff's claim that decedent's status was contractual because of his parents' employment is not supported by the record. The employment of decedent's father had been terminated and he "presumed" his trailer house tenancy had terminated. Decedent's mother was still employed but there is no evidence in the record that living quarters for the family were furnished as part of her compensation. There is nothing in the record to show that she had ever been in or near the bunkhouse. The situation is not comparable to the cases where a minor accompanies a parent who is an invitee. There is no claim that there ever was any contract or agreement relative to housing in the bunkhouse. There was no relationship of innkeeper and guest. There is no claim that failure of electricity to the trailer house had anything to do with the fire. Defendant did not know decedent was in the building.

There is no evidence whatsoever to support any theory that defendant was an insurer of decedent's safety.

Because of our conclusions on other issues decedent's status as an invitee, licensee or trespasser is unimportant. The fatal weakness in plaintiff's case is lack of proof of negligence and proximate cause.

II. Plaintiff's case is bottomed on the evidence that Davis was drunk and entered the bunkhouse with a lighted cigarette. Defendant had gone to bed about midnight. He did not know Davis was drunk. There is no evidence that Davis had been drunk before. There is no evidence that defendant knew or should have known that Davis might be drunk and while drunk disregard defendant's admonition against smoking. There is no showing of any act of negligence by defendant or neglect of any duty owed decedent.

Davis was off duty when he did his drinking. Whatever he may have done was not in connection with his employment. There is no doctrine of respondeat superior involved.

It is the general rule that to generate a jury question there must be substantial evidence. A mere scintilla is not enough. 88 C. J. S., Trial, section 208. This has been the rule in Iowa since 1892. Meyer v. Houck, 85 Iowa 319, 52 N.W. 235; Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215. See also Reed v. Willison, 245 Iowa 1066, 65 N.W.2d 440.

III. What caused the fire? We have nothing but speculation and conjecture insufficient to support a claim of actionable negligence. Davis entered the building with a lighted cigarette. No one knows where he went or what he did. Two truckers, who escaped from the fire, were presumedly sleeping upstairs. No one knows who they were or what they were doing. The electric system had been giving trouble because of a power failure. No one knows where or how the fire started. The fire was widespread when discovered and so total in its destruction as to make a search for evidence futile. With many possibilities and little evidence there is nothing upon which to base liability.

IV. The law applicable to the case is set out in Tedrow v. Des Moines Housing Corporation, 249 Iowa 766, 87 N.W.2d 463, 86 A. L. R.2d 830. See also Hutchinson v. Des Moines Housing Corporation, 248 Iowa 1121, 84 N.W.2d 10.

Those cases involved an apartment house fire in which several lives were lost. After the fire a fuse box found in the ruins disclosed the use of copper coins to replace electric fuses. There was evidence that the fire started in that part of the building and testimony by experts that using a penny to replace a fuse constitutes a fire hazard. In the Tedrow case we said:

"The mere happening of a fire with the resultant injuries raises no presumption of negligence. Dodge v. McFall, 242 Iowa 12, 15, 16, 45 N.W.2d 501, 502, and cases cited. The burden is of course upon one who seeks to recover because of the negligent kindling of a fire to prove such negligence, and this is equally true whether he relies upon the evidentiary doctrine of res ipsa loquitur or upon specific acts. This is elementary. * * *

"We said in Dodge v. McFall, supra, page 14 of 242 Iowa, page 502 of 45 N.W.2d: 'To entitle a plaintiff to the benefit of the doctrine of res ipsa loquitur he must establish the way the injury occurred as well as defendant's control of the instrumentalities involved.' Since plaintiff's case here goes no further than to show that there were coins in the well sockets which created a fire hazard, we must determine whether he has sufficiently shown the way the injury occurred. The doctrine of res ipsa loquitur does not avail him unless he has made such a showing. A much cited, because it is thorough and well considered, case on this question is Highland Golf Club v. Sinclair Refining Co., 59 F. Supp. 911. There Judge Graven of the United States District Court for the Northern District of Iowa went into the question of the application of the doctrine to fire cases generally. In the course of its discussion the court said, at page 919: 'Apart from statute, the Courts have been very reluctant and sparing in drawing an inference of negligence from the starting of a fire.' [loc. cit. 769 and 770] * * *

"But we are unable to find sufficient evidence of the manner in which the fire was kindled here to say that the requirement has been met. Giving the evidence the most favorable interpretation in favor of the plaintiff that it will reasonably bear, as we must, we are unable to find it creates a jury question as to what caused the injury. [loc. cit. 770] * * *

"Much the same reasoning applies to the matter of specific negligence * * *. The most we are told is that the fire was first discovered in the tavern portion of the building. But it may have originated from any one of many causes. Fires occur frequently, and often without negligence on the part of anyone. The law rightly requires one who claims such negligence to prove it, by something which makes the theory reasonably probable. We find nothing here more than a possibility." (Loc. cit. 772)

The inferences of causation in the Tedrow case were stronger than in the case before us.

Because of our conclusion that plaintiff's case was wholly lacking in evidentiary support we need not consider other matters argued.

The case is—Affirmed.

All JUSTICES concur.

LARSON, J. (concurring specially)—I concur in the result and with the opinion as written with the exception of Division IV thereof. I would simply conclude as to that proposition that there was no substantial evidence as to how the fire started, and nothing appears which would raise an inference of causation.

The authorities cited by the majority in this division are not in point. In both the Tedrow and Hutchinson cases I felt, and still do, that there was substantial evidence from which a proper inference of causation would arise. In this enlightened age almost anyone knows placing pennies in a fuse box invites a disastrous fire. The proprietor either knew or should have known of that negligent act. Not so here, where no such self-connecting facts appear. The mere fact that one of those lost in this fire was intoxicated and was smoking a cigarette when he went upstairs an hour earlier, even when connected with a prior fire when he was smoking in bed, falls far short of establishing an inference the fire was started by his negligence at this time. The majority's statement that the inference of causation in the Tedrow case was much stronger I agree is an understatement to say the least. The dividing line is between them, in my humble opinion.