John B. BAILEY, Individually and as President of Local 1196, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, on behalf of the members of the class composed of employees of the Defendant, Iowa Beef Processors, Inc., at its Mason City, Iowa, plant, Appellants,

v.

IOWA BEEF PROCESSORS, INC.,
Appellee.

No. 55684.

Supreme Court of Iowa.

Dec. 19, 1973.

Harry H. Smith, Sioux City, and Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for appellants.

P. L. Nymann, Sioux City, for appellee.

Heard before MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

A class action was brought claiming members of a labor union were creditor beneficiaries under a contract providing for a consent decree previously entered in federal court. Trial court sustained a motion to dismiss. We affirm.

On February 24, 1969 the United States government filed an action in the United States district court under section 7 of the Act of Congress of October 15, 1941. That Act will hereafter be called the Clayton Act. The provision upon which the action in federal court was grounded appears as 15 U.S.C., section 18 as amended. Defendant, Iowa Beef Processors, Inc., (hereafter called defendant) was charged under the anti-trust provisions of the Clayton Act with having improperly acquired two packing plants from Blue Ribbon Pack, Inc. of LeMars and Mason City. The action in federal court resulted in a consent decree which required defendant to sell the packing plants in Mason City and LeMars within two years upon terms and conditions to be approved by the court. It also provided:

"Pending any sale pursuant to the terms of this Final Judgment and subject to the provision of this Court's order of October 6, 1969, [defendant] shall continue the normal operations of Blue Ribbon and shall take no action with respect to the personnel or assets of Blue Ribbon which would impair [defendant's] ability to accomplish the divestiture * * *."

The decree further provided for the retention of jurisdiction in federal court for enforcement, construction, modification or termination of any of its provisions.

The decree was entered March 23, 1970. On March 1, 1971 defendant closed down all production at its Mason City plant and laid off most workers. The plant remained closed until May 6, 1971 when all employees were recalled to work. On December 6, 1971 plaintiff brought this suit against defendant in which he claims the "* * * closing down of its production of its Mason City plant and the consequent laying off of its employees who constitute the class represented by the plaintiff was not a continuation of defendant's normal operations and impaired defendant's ability to accomplish divestiture * * *."

Plaintiff, individually and as president of a labor union, brought this action on behalf of the members of the class composed of employees of defendant at the Mason City plant. In his petition plaintiff claimed members of the class were third-party beneficiaries of the agreement providing for the consent decree. The petition alleged the agreement was "embodied" in the final judgment, a copy of which was attached to the petition.

Defendant based its motion to dismiss on two grounds. In the first ground defendant pointed out the federal court had retained exclusive jurisdiction for enforcement of and compliance with its decree. Defendant argues the state court therefore had no jurisdiction to entertain this suit. In sustaining the motion to dismiss the trial court adopted this argument and did not reach the second ground. Defendant's second ground claimed the members of plaintiff's class were not third-party creditor beneficiaries under any agreement between the federal government and defendant. We disagree with the trial court as to the first ground but we think the case must be affirmed on the second.

I. As indicated, the federal court retained jurisdiction for enforcement of the consent decree. We do not believe this retention vested the federal court with exclusive jurisdiction to entertain plaintiff's present suit. The trial court believed the retention provision rendered the consent decree conditional rather than final. But a provision for retention of jurisdiction is effective in accordance with its wording. Des Moines Terminal Co. v. Des Moines Union Ry. Co., D.C., 52 F.2d 605, 613. The retention provision in the consent decree was as follows:

"Jurisdiction is retained for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment or for the modification or termination of any of the provisions thereof, and for the enforcement of compliance therewith and punishment of violations thereof."

Neither plaintiff nor the class he represents claim to have been parties to the federal action. They are not mentioned in the decree. Under the rule in Des Moines Terminal Co. v. Des Moines Union Ry. Co., supra, we interpret the language of the retention provision to fall short of plaintiff's claim. The claim lies outside things necessary or appropriate for the construction or carrying out of the decree. It lies outside things necessary for its modification or termination. We do not agree the case should be dismissed because of exclusive federal jurisdiction under the retention clause.

II. The trial court should however be affirmed because the second ground of the motion to dismiss should have been sustained. This was the ground in which defendant asserted any agreement between it and the federal government "* * * was not for the direct or primary benefit of plaintiff or his class." Defendant insisted any benefits accruing to plaintiff's class were only incidental, collateral, or consequential. We agree.

It is the rule in Iowa and in most American jurisdictions "* * * that a third person may, in his own right and

name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration." 17 Am.Jur.2d, Contracts, section 302, page 722. The right of a third-party beneficiary to sue in Iowa can be traced through a long line of cases. These were collected and discussed in some detail in Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515, in which we cited with approval Restatement, Contracts, section 133, page 151. Both parties have cited Olney and the Restatement section it approves. In adopting the Restatement rule we interpreted it in the light of our earlier cases and text authorities. The right of a third-party beneficiary to sue in Iowa was recognized even though he was not shown to have known of the contract at the time it was made. Baker v. Bryan, 64 Iowa 561, 21 N.W. 83. In Davis v. Clinton Water Works Co., 54 Iowa 59, 6 N.W. 126, we emphasized the necessity of privity between the parties. We stated " * * * if mere strangers may enforce the contract by actions, on the ground of benefits flowing therefrom to them, there would be no certain limit to the number and character of actions which would be brought thereon." In German S. Bk. v. N. W. Water & L. Co., 104 Iowa 717, 74 N.W. 685, the right of a person to sue as a third-party beneficiary was limited to those cases where the person for whose benefit the promise was made "has the sole, exclusive interest in its performance." Also cited in Olney v. Hutt, supra, were text statements from 12 Am.Jur., Contracts, section 281, page 833; 17 C.J.S. Contracts § 519(c), page 1127, et seq.; and 13 C.J., Contracts, section 817, page 709.

It might be suggested more recent developments in contract law accord third-party beneficiary status in more situations than were indicated in our earlier decisions, particularly in Davis v. Clinton Water Works Co., supra, and German S. Bk. v. N. W. Water & L. Co., supra. But the rule as it has been developed throughout the country is not without limitations. See the following sections from 17 Am.Jur.2d, Contracts, section 304, page 727, section 305, page 730, section 307, page 732, section 311, page 739, and section 315, page 743. Especially appropriate is the following:

"As a general proposition, the determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it.

" * * * The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish.

"Although the above statements are clear enough as broad statements of principle, it is not always clear as to just what is meant when the courts say that there must be an intent to benefit the third person or that the intention of the parties is controlling. * * * A provision in a contract that it was made for the benefit of a third person or that he should have the right to enforce the same would clearly indicate the intention of the parties that the promise should inure to the benefit of the third person. * * * It has been indicated that the contracting parties must have intended to confer an actionable right upon the third person. Moreover, it has been declared that for anyone to be a third-party beneficiary entitled to recover on a contract both parties to the contract must so intend *and must indicate that intention in the contract.* * * * [A] contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the parties. * * *." (Emphasis added) 17 Am.Jur.2d, Contracts, section 304, pages 727-730.

■ We see nothing in fundamental contract law which aids plaintiff in his claim that his employees, unmentioned in the contract, were creditor beneficiaries.

■ III. Plaintiff argues the nature and purpose of the Clayton Act itself accords them the status he claims. He cites various cases which have interpreted the Clayton Act, especially Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510; United States v. Bethlehem Steel Corp., D.C., 168 F.Supp. 576; United States v. Von's Grocery Co., 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed.2d 555. The authorities plaintiff cites do not reach or support the position he takes. They are authority only that the purpose of the Act is to preserve competition in industry sometimes but not always in small units. In Brown Shoe Co. v. United States, supra, the dominant theme of congressional consideration of the Clayton Act was said to be " * * * a fear of what was considered to be a rising tide of economic concentration in the American economy. * * *."

It does not follow plaintiff's union members were creditor beneficiaries of the agreement. Plaintiff argues " * * * [o]bviously, their immediate, vital interests were at stake. * * * It is offensive—logically and morally—to suggest that if employees lose their jobs as a result of a breach of an agreement between their employer and the Government that somehow their interests have been only 'collaterally' or 'incidentally' affected. The plant obviously could not operate—and consequently [defendant] could not discharge the contractual mandate to which it had committed itself—if there were no hourly employees to slaughter the beef and dress the carcasses."

Plaintiff misconstrues the distinction between creditor and incidental beneficiaries. The distinction is not based on how strongly or adversely one might be affected by the breach of a contract. The distinction, as indicated in the previous division, depends on whether the contracting parties had and expressed the purpose to bestow a benefit on the third person. Any person claiming to be a third-party beneficiary to a contract is bound to feel vitally interested in it. Such a person will always feel more and more vitally interested as the economic stakes increase. However the economic consequences do not necessarily relate to the controlling question of whether the parties who entered the contract intended and expressed an intention to benefit those claiming to be third-party beneficiaries.

■ There is no indication in the Act or in the authorities which interpret it that congress intended employment opportunities to be any more than incidental benefits arising from the enforcement of the Act. The fundamental purpose of the Act was to control monopolies for the direct economic benefit of the entire public. Plaintiff cites no authorities and we find none which support a contention that the job opportunities of defendant's employees were any factor in the enactment or enforcement of the Act. Indeed, there is no claim or indication the defendant would offer fewer or poorer jobs if it had succeeded in achieving what the government claimed was a monopoly.

This interpretation is supported by the language of the decree itself which couples with the requirement of continued normal operations the further requirement defendant should " * * * take no action with respect to personnel or assets of Blue Ribbon which would impair [defendant's] ability to accomplish the divestiture. * * *." This is a strong indication the continued normal operations were required and agreed upon by the parties for the primary purpose of keeping the assets of Blue Ribbon attractive to potential purchasers so as to make the sale practicable.

We find nothing in the Clayton Act or in the authorities which interpret it to indicate employees of involved parties are given any more or any less from resulting de-

crees than is given any other citizen. The Act gives each citizen whatever protection it can against the monopolistic concentration of economic power. It should do no less and seeks to do no more. No special protections are accorded plaintiff's class or any other class.

IV. We must finally consider the effect of the broad assertion in the petition that plaintiff's employees were third-party beneficiaries under the contract entitled to bring this action. No motion to strike this assertion was combined under rule 111, Rules of Civil Procedure. See Hutchinson v. Des Moines Housing Corp., 248 Iowa 1121, 84 N.W.2d 10. We must determine whether the assertion by plaintiff of the third-party beneficiary status must be accepted as true. He alleges no underlying facts to support such a claim; he merely sets out the federal court decree and makes the claim the employees he represents are creditor beneficiaries under the agreement for the decree.

Even the most extravagant factual averment is dignified into a verity when exposed to a motion to dismiss. Our cases are legion which hold we take as true all well pleaded facts in a petition when considering a motion to dismiss. In reviewing the motion we examine the petition " * * * to determine whether it appears to a certainty [plaintiff] * * * failed to state a claim on which any relief may be granted under any state of facts which could be proved in support of the claims asserted * * *. (Authorities)." Freese v. Lemmon, 210 N.W.2d 576, 579 (Iowa 1973).

We have acknowledged some difficulty in reconciling our early cases dealing with the pleading of conclusions. See Bindel v. Iowa Manufacturing Co. of Cedar Rapids, 197 N.W.2d 552 (Iowa 1972) where at page 554 we said:

"Much has been written regarding construction of pleadings when attacked by a motion to dismiss. Our earlier cases create some uncertainty as to the applicable rules. However, it is now well settled that where a doubtful pleading is attacked by motion before answer doubt will be resolved against the pleader. This rule is qualified by the additional provision that if the petition does allege ultimate facts upon which plaintiff might recover and states a claim under which evidence may be introduced in support thereof, the petition should be construed in the light most favorable to the plaintiff with doubts resolved in his favor and the allegations accepted as true. (Citations)."

■ We have consistently held a motion to dismiss (a demurrer in earlier cases) admits only *well pleaded* facts. Conclusions of law or conclusions of fact have not been allowed except where underlying facts are first alleged. In Benton v. Morningside College, 202 Iowa 15, 209 N. W. 516, Justice Albert stated the rule to be " * * * making of this motion [to dismiss] confesses * * * all facts in the pleading well pleaded, but does not confess conclusions of law set out in the pleading, or conclusions of fact, except where the facts, from which the conclusions of fact logically follow, are set out."

We stated the rule in a similar way more recently in Meester v. Roose, 259 Iowa 357, 144 N.W.2d 274 as follows:

"While a motion to dismiss admits the truth of all well pleaded issuable and relevant facts, it does not admit mere conclusions of fact or law not supported by allegations of ultimate fact. Also, doubtful pleadings when challenged by such a motion will be resolved against the pleader. (Citations)." 259 Iowa at 359, 144 N.W.2d at 275.

In Benton v. Morningside College, supra, we pointed out:

"There seems to be some confusion over the question of whether a conclusion may be made in a pleading. We conceive the rule to be that, where the facts which lead to a logical conclusion are recited in full, a pleading so setting out the facts, followed by the conclusion of the pleader, is a prop-

er pleading, but the setting out of the conclusion without facts supporting it makes a bad plea. (Citations) * * *." 202 Iowa at 21, 209 N.W. at 519.

We believe the term ultimate facts was properly defined in Johnson v. Johnson, 92 Mont. 512, 15 P.2d 842, 844 to be "[t]he issuable, constitutive, or traversable facts essential to statement of the cause of action."

The term "ultimate fact" as used in the law of pleading is sometimes improperly confused with the term "ultimate question" in the trial of a suit. The use of the adjective "ultimate" in no way makes the terms similar. A familiar trial rule makes it improper to ask a witness a question which calls for the ultimate fact to be determined at trial. 98 C.J.S. Witnesses § 340c, page 52. The term ultimate fact as used in the law of pleading was well explained in McCarty Iowa Pleading, section 29, page 22 as follows:

"The statement or pleading of a party showing his right of action must show operative facts entitling him prima facie to a remedy. 'Operative facts are (1) such acts and events as operate under the law to invest some one with a legal right, and are hence called investitive facts; (2) such as operate to divest some one of a legal right, and hence are called divestitive facts; and (3) such as work a wrongful interference with an existing legal right and hence are called culpatory facts. And such facts as in their nature tend to prove or disprove the existence of any of the operative facts aforesaid are called evidential facts.' (Citing Phillips Code Pleading, page 2).

"Many writers use the term 'ultimate facts' to designate facts to be pleaded as distinguished from evidential facts, but Judge Phillips' term 'operative' seems preferable. He says further: 'Operative facts are those to which the substantive law annexes consequences. They are facts from which proceed rights and obligations and wrongs. They are the facts which enter into and create jural relations between persons; * * * and these facts, because they operate under the law to create rights and obligations are called operative facts.' (Citing Phillips Code Pleading, page 166)." See also Winneshiek Mutual Ins. Assn. v. Roach, 257 Iowa 354, 132 N.W.2d 436; and 61 Am.Jur.2d, Pleading, section 17, page 468.

Plaintiff's claim the employees he represents are third-party beneficiaries under the contract is an allegation as to status. "General allegations as to the status and condition of persons or corporations, without stating the facts to support such allegations, are usually mere conclusions of law; * * *." 71 C.J.S. Pleading § 27a, page 67. (But see rule 98, R.C. P.). The allegation is not well pleaded and must be ignored in considering defendant's motion to dismiss. Plaintiff alleges insufficient facts to support his claim and it was accordingly properly dismissed.

V. Plaintiff is not supported in his claim by the law of contract by the Clayton Act itself or by the law of pleading. The judgment of the trial court is affirmed.

Affirmed.