Robert C. WILSON and Eva I. Wilson, Husband and Wife, Appellants,

v.

Ernie PAUL and Vivian E. Williams, Executor of the Estate of Harold Williams, Deceased, Appellees.

No. 53797.

Supreme Court of Iowa.

May 5, 1970.

Robert E. Ford, Ford, Terpstra & Wilkinson, Cedar Rapids, for appellants.

James W. Crawford and Gene V. Kellenberger, Cedar Rapids, for appellees.

STUART, Justice.

Plaintiffs' apartment house was damaged by fire while under construction. They brought action against the plumbing contractor and his employee. The trial court submitted one specification of negligence to the jury which returned a defendants' verdict. Plaintiffs appeal from the judgment entered thereon claiming the trial court erred in refusing to submit the theory of res ipsa loquitur and other specifications of negligence to the jury. We reverse and remand for new trial because of the court's failure to submit res ipsa loquitur.

■■ I. In order for the doctrine of res ipsa loquitur to apply, plaintiff must establish the cause of the fire. "* * * [T]he doctrine of res ipsa loquitur does not raise any [inference] as to what did occasion the injury; but, after the evidence has established the thing which did occasion the injury, then under certain circumstances, this doctrine will raise [an inference] of negligence." Orr v. Des Moines Elec. Light Co. (1928), 207 Iowa 1149, 1155, 222 N.W. 560, 562.[1]

"* * * [T]he mere occurrence of a fire with resultant injuries does not permit an inference of negligence", Dodge v. McFall (1951), 242 Iowa 12, 15, 45 N.W.2d 501, 503, but "where the circumstances under which the fire originated and spread are such as to show that defendant or his servants were negligent in connection therewith", the doctrine may apply. 65A C.J.S. Negligence § 220.25 p. 617. 35 Am.Jur.2d 630, Fires § 51. See Connecticut Fire Insurance Co. v. Gusman (1966), 259 Iowa 271, 144 N.W.2d 333, 336; John Rooff & Sons, Inc. v. Winterbottom (1957), 249 Iowa 122, 132–133, 86 N.W.2d 131, 138.

"The evidence as to the cause of the fire is largely circumstantial. We are committed to the rule that in such cases the evidence must be such as to make plaintiff's theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary for the testimony to be so clear as to exclude every other possible theory." John Rooff & Sons, Inc. v. Winterbottom, supra, 249 Iowa at 126, 86 N.W.2d at 134.

There was evidence from which the jury could find the facts now summarized. Williams Plumbing and Heating of Marion had the plumbing contract for an eight unit apartment house plaintiffs were building. Paul, hereinafter referred to as defendant, was the head plumber for Williams and did all the plumbing on the apartment house pertinent to this action.

By July 13, 1966, the building was about 90% completed. On that date defendant was installing fixtures on the second floor. The only work remaining upstairs other than the plumbing was carpeting, some painting and minor adjustments. No carpenters were working upstairs on the day of the fire. The building had not been connected to the electrical power supply at that time.

Defendant was the only plumber working that day. He was hooking up drain and water lines to the fixtures in the kitchens and bathrooms. Shortly before noon and immediately after noon he was working on the kitchen sinks in the two west apartments, which sat back to back with a common set of pipes. The rough plumbing and the walls through which the pipes emerged were completed.

Defendant was using a blow torch to heat the parts to be connected to a least 450° so the solder would properly melt and seal the joint. He was required to work very close to the wall which consisted of noninflammable sheet rock over inflam-

---

1. In recognition of the modern view, we have substituted "inference" for "presumption". John Rooff & Sons, Inc. v. Winterbottom, (1957), 249 Iowa 122, 86 N.W.2d 131.

mable sound board, 2 x 4's and paper covered insulation around the pipes.

As defendant was leaving work a little after 5 o'clock, he smelled smoke. He checked outside to see if something was burning and found no fire. He then testified: "I went around and checked my areas where I had been working, looked at the inside of each apartment and I didn't see no smoke so I went back out and started loading my tools up again. About that time I heard a cracking noise, sounded like it was up in the southwest corner apartment, so there's where I went up and I seen fire coming up the wall. I was able to see the fire through the wall outlets adjacent to the sink. The cover plate wasn't on and the fire was coming up. I am not sure that when I first smelled smoke that I checked this southwest upper apartment, I could have missed it. There's 8 apartments. When I saw the flames coming up this was in the southwest upper apartment. I next ran down to the next apartment building of Mr. Wilson's, the eightplex, and knocked on two or three people's doors and told them to call the fire department. Then I ran back. Mr. Wilson had a garden hose in the yard with a sprayer on it. I cut that off, hooked the hose, ran upstairs, knocked the hole in the wall and put out most of the fire, I thought. I knocked a hole in the wall with a hammer. This was immediately in the area where the sink was. In that wall, right in front of the sink. The whole wall was smoke and smoke was pouring out all over it. I put the fire hose in this hole and doused whatever I could. The fire was burning up the wall inside. The flames were confined to the inside of the wall. I also put water in the outlet—sprayed water all over there trying to get it out."

James Reynolds, Marion Fire Chief and a deputy fire marshal for the State of Iowa, made an electrical inspection of the building at 3 o'clock in the afternoon the day of the fire, he testified: "For purposes of this fire that building was dead [electrically]." After the fire he made an inspection to determine the origin and cause of the fire. His investigation included an interview with defendant. He reached the conclusion that "the point of origin was where the plumbing pipes were coming out where he was sweating these joints within the 2 x 4's 16 inches apart".

"When I investigated into the wall area, there were no materials in the wall that I could have considered as giving rise to any internal combustion and with no electricity in the building, I also ruled out any electrical involvement and there is no other factor that was present that could have contributed to this fire other than the torch of the plumber."

"From my investigation after the fire, based on my conversations with Mr. Paul and his testimony here in the court room and based on my experience and training as to the cause of the fire I have an opinion as to the cause of this fire. My opinion is that I believe a spark from the plumber's torch set fire to the wall. This burned for some time before being noticed."

On cross-examination he expressed the opinion that the fire had burned three or four hours before it was discovered.

There were several other persons in the building during the day, but no one but defendant was working in the immediate area where the fire started or on the second floor of the building. Plaintiffs' evidence did not exclude the possibility that other persons might have been in the west second floor apartments between the time defendant finished his work and the time the fire was discovered.

■ In our opinion the evidence quite satisfactorily takes this case out of the general rule that the mere occurrence of a fire raises no inference of negligence. The circumstances and the expert's testimony pinpoint the place where the fire originated and certainly makes defendant's torch more probably the cause of the fire than any other theory.

■ II. "The two foundation facts for application of the res ipsa doctrine, which permits an inference of defendant's negligence from the happening of the injury, are: (1) exclusive control and management by defendant of the instrumentality which causes the injury, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." Boyer v. Iowa High School Athletic Association (1967), 260 Iowa 1061, 1066, 152 N.W.2d 293, 296; Sweet v. Swangel (1969), Iowa, 166 N.W.2d 776, 778 and citations; John Rooff & Sons, Inc. v. Winterbottom, supra at 249 Iowa 132, 86 N.W. 2d 137. The applicability of the doctrine is to be determined from common experience alone and not from evidence tending to prove a particular negligent act. Sweet v. Swangel, supra.

The trial court refused to submit res ipsa loquitur to the jury, stating: "I'm not submitting the issue of res ipsa loquitur because I have doubts as to its applicability, because I think while the evidence shows that the defendant was in exclusive control of the torch, there is no showing that defendant was in exclusive control of the building or even fully exclusively in control of the portion of the building involved."

■ This ruling was based on language in John Rooff & Sons, Inc. v. Winterbottom, supra, which pointed out the jury there could have found defendant (there plaintiff because of the manner in which the action arose) was in control of the building as well as the torch at the time of the fire. We believe the trial court failed to recognize the different purposes for showing control of the torch and control of the building. The required foundation fact is exclusive control of the *instrumentality* which causes the injury. Exclusive control of the property injured is not required as a foundation fact. In Winterbottom it was important to show defendant had exclusive control of the whole building at the time the fire started not as a foundation fact, but to show the fire originated

from defendant's torch rather than some other source. Had the fire in this case originated in an open room where paint rags, a cigarette or some other agency might have been an originating cause, control of the whole room would have become important. With evidence here pinpointing the origin of the fire to the inside of the wall adjacent to the sink on which defendant was working, it was highly improbable that it was started by anything but defendant's torch and the control of the room or building was not significant.

■ The evidence established the point where the fire originated. The jury could find it was caused by defendant's torch. The evidence would support a jury finding that the fire started when defendant had the exclusive control and management of the torch. Common experience tells us that fires of this kind would not occur in the ordinary course of things if workmen used reasonable care. There was a sufficient showing of the foundation facts for the application of the doctrine of res ipsa loquitur. The fact that a fire resulted here would allow, though not compel, the jury to draw the inference that defendant was negligent.

In Tedrow v. Des Moines Housing Corporation (1958), 249 Iowa 766, 87 N.W.2d 463; Dodge v. McFall (1951), 242 Iowa 12, 45 N.W.2d 501 and Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Co. (1945 N.D.Iowa), 59 F.Supp. 911, 919, cited by defendant, plaintiff failed to establish the cause of the fire.

World Fire and Marine Ins. Co. v. Alliance Sandblasting (1927), 105 Conn. 640, 136 A. 681, 683, does not aid defendants. There res ipsa loquitur was submitted to the jury. Plaintiff sought a holding that as a matter of law the jury could not accept defendant's claim that the fire did not originate through the negligence of its servants.

■ III. Plaintiff alleged the following as specific allegations of negligence.

"a. In failing to exercise ordinary care in the installation of said materials to prevent a fire from occurring with subsequent damages to the plaintiff.

"b. In failing to use reasonable care to prevent the spread of the fire.

"c. In permitting the fire to burn an unreasonable length of time before turning in a fire alarm, thus causing the fire to spread.

"d. In failing to provide adequate apparatus for extinguishing the fire he caused.

"e. In handling and using a blow torch in such a manner that the fire from the torch ignited the adjacent combustible materials causing the fire.

"f. In failing to make an adequate inspection of the surrounding area after completing his work to make sure that none of the area was ignited.

"g. In failing to install the plumbing and plumbing materials in the plaintiff's building in a safe and proper manner so as to avoid starting a fire therein.

"h. In failing to take necessary and adequate safety precautions prior to and after the installation of the plumbing adjacent to a combustible wall so as to avoid starting a fire while so doing."

Two additional specifications were alleged against the employer. "a. In permitting the defendant, Ernie Paul, to use and handle a blow torch in the plaintiff's structure without adequate supervision.

"b. In failing to instruct the defendant, Ernie Paul, in the safe use and safety measures to be undertaken when using a blow torch."

The trial court submitted only specification h. He was right.

Subsections (a) (e) and (g) are allegations of general negligence which are covered by the res ipsa loquitur count.

There is either no proof of the negligence alleged in the other specifications of negligence or no proof the alleged negligence was a proximate cause of the fire and resulting damage.

IV. Plaintiff alleges the trial court erred in failing to tell the jury that defendants had a duty to use due care and handle and use the torch during the installation of the plumbing in a safe manner so as to avoid starting a fire. Although this also appears to be a charge of general negligence, the easy answer is that no such specification of negligence was pleaded. There was evidence that defendant should have installed the waterstops on the waterlines as part of the rough plumbing so that he would not be required to work so close to the wall with the torch. There was also evidence defendant should have wrapped a wet cloth around the pipe as a safety precaution while he was using the blow torch. Neither of these acts was pleaded as negligence.

For the reasons staated in division I, the case is reversed and remanded for new trial in accordance herewith.

Reversed and remanded.

MOORE, C. J., and LARSON, MASON and LeGRAND, JJ., concur.

RAWLINGS and BECKER, JJ., concur in result.

REES and UHLENHOPP, JJ., take no part.