**IN THE COURT OF APPEALS OF IOWA**

No. 14-0412
Filed July 22, 2015

**TAMCO PORK II, LLC and FARM
BUREAU INSURANCE COMPANY,
as Subrogee of TAMCO PORK II, LLC,**
    Plaintiffs-Appellants,

**vs.**

**HEARTLAND CO-OP and PRO
BUILD, LLC,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Marshall County, James C.

Ellefson, Judge.

Appellant claims the trial court erred in not submitting a requested general

negligence instruction to the jury. **AFFIRMED.**

Sharon Soorholtz Greer of Cartwright, Druker & Ryden, Marshalltown, for

appellants.

David M. Dahlmeier and Mark R. Bradford of Bassford Remele,

Minneapolis, Minnesota, and Sarah M. Kouri of Loney & Schueller, LLC, Des

Moines, for appellee Heartland Co-op.

Samuel C. Anderson of Swisher & Cohrt, P.L.C., Waterloo, for appellee

Pro Build, LLC.

Heard by Vogel, P.J., McDonald, J., and Zimmer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

Tamco Pork II, LLC, and Farm Bureau Mutual Insurance Company, as subrogee, (collectively, hereinafter "Tamco") pursue this appeal following an adverse jury verdict in their action for negligence against Heartland Co-op and Pro Build LLC. Tamco's claim against the defendants arises out of a fire occurring at Tamco's newly renovated hog-production facility. On appeal, Tamco contends the district court erred in refusing to give Tamco's requested general negligence (res ipsa loquitur) instruction to the jury.

I.

Tamco operated a hog-production facility near Gilman, Iowa. In 2008, Tamco decided to expand its hog-production facility. The expansion included construction of a gestation building, a farrowing building, and an office space/hallway that connected Tamco's production buildings. Tamco directly contracted with Heartland to install the exterior infrastructure necessary to provide the facility with liquid propane gas, including installation of a liquid propane gas tank and liquid propane gas lines from the storage tank to the exterior of the facility. Tamco directly contracted with Pro Build to install the interior piping and plumbing systems, including installation of the gas lines from the exterior walls throughout the interior of the building to connect heaters and other devices.

By the end of March 2009, the gestation building was finished and in use. The farrowing building and office/hallway were near completion. The primary

remaining work was installation and connection of the exterior gas lines to the facility.

On the morning of April 1, 2009, Jeff Strayer, the Heartland installer, arrived at Tamco's facility to connect the exterior gas lines to the building. Between 9:30 and 10:00 a.m., he left the job site to purchase copper wire necessary to complete the project. At approximately the same time, Eric Sage, a Tamco employee, was moving hogs into the new farrowing building. Sage attempted to turn on the ventilation fans in the building, which was the first time they would have been turned on. Initially, the fans did not turn on. Sage toggled the switch back and forth several times until the ventilation fans began operating. He did not notice anything amiss. Shortly after 11:00 a.m., while working in the new gestation building, Sage heard hogs squealing. He saw black smoke coming from the doorway at the entrance to the new office/hallway. He opened the door and saw thick black smoke in the hallway and also felt heat. He estimated it was about 11:20 or 11:25 a.m. at this time. Sage exited the building, which was quickly consumed by fire.

Tamco brought this action against Heartland and Pro Build. The case was submitted to the jury on a theory of negligence. With respect to Heartland, the marshalling instruction set forth three specifications of negligence: failing to install the exterior propane gas system properly; failing to close all lines from the propane system to the building before introducing gas; and failing to verify all lines from the propane system to the building were closed before leaving the site. With respect to Pro Build, the marshalling instruction set forth three specifications

of negligence: failing to cap the propane gas lines within the building site; failing to shut off valves within the building to inhibit the flow of propane gas before the installation was fully complete; and failing to inspect the lines in the building to verify they were capped and in the off position. In addition to its specifications of negligence, Tamco also requested a general negligence (res ipsa loquitur) instruction. The proposed instruction provided, in relevant part:

> Under the rule of general negligence, the occurrence of an injury allows you to conclude that the Defendants were negligent if the Plaintiffs prove (1) the fire was caused by fire causing materials under the exclusive control of the Defendants, and (2) the fire would not have occurred if ordinary care had been used.

The court did not submit the requested instruction. The jury returned a defense verdict, finding no negligence by either defendant.

Tamco filed a motion for a new trial, arguing the res ipsa loquitur instruction should have been given to the jury. The district court denied the motion. The district court concluded the instrumentality causing the fire was never established. The district court also concluded the evidence did not establish who had control of the unknown instrumentality. Ultimately, the district court concluded the record did not support submission of the requested instruction. Tamco timely filed this appeal.

## II.

There is a lurking inconsistency in our law regarding the scrutiny applied to the district court's refusal to give a requested jury instruction. Traditionally, the refusal to give a requested instruction was reviewed for the correction of legal error. *See, e.g.*, *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823

(Iowa 2000) ("We review refusals to give jury instructions for correction of errors at law."); *Kuehn v. Jenkins*, 100 N.W.2d 610, 617 (Iowa 1960) ("We have so often said that the theories of both parties to a lawsuit, so far as they are supported by substantial evidence, must be submitted, and that it is prejudicial error to fail to do so, that citation of authorities seems needless."). In *State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010), however, the court stated "review of alleged instructional error depends on the nature of the supposed error." The *Piper* Court then cited two cases—one for the proposition that challenges to an instruction are reviewed for errors at law and one for the proposition that review of the refusal to give an instruction is reviewed for an abuse of discretion. *See Piper*, 663 N.W.2d at 914 (citing *State v. Walker*, 600 N.W.2d 606 (Iowa 1999), and *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979)). Since *Piper*, both standards of review have been applied. *Compare Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (stating that review is for correction of errors at law and that it is "error for a court to refuse to give a requested instruction where it correctly states the law, has application to the case, and is not stated elsewhere in the instructions"), and *Banks v. Beckwith*, 762 N.W.2d 149, 151 (Iowa 2009) (analyzing failure to give res ipsa loquitur instruction for correction of errors at law), *with Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006) ("We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion."), *Anderson v. State*, 692

N.W.2d 360, 363 (Iowa 2005) (same), and *Kiesau v. Bantz*, 686 N.W.2d 164, 171 (Iowa 2004) (same and citing *Piper*).

Our court implicitly noted and attempted to reconcile the inconsistency in our case law in a recent decision:

> Initially, the parties disagree on the scope of our review of a district court's refusal to give a jury instruction. Sanders maintains our review is for errors of law; the State counters that we must apply an abuse-of-discretion standard.
>
> The State has time on its side, as a recent opinion states review of a refusal to give a jury instruction is for an abuse of discretion. *See State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010). However, in that case, the proposed jury instruction related to an unsettled issue of law. *Id.* at 837. While the district court could have addressed and decided the unsettled issue, it instead chose to give a stock jury instruction. *Id.* at 835. The court's decision was a paradigmatic discretionary act.
>
> Here, in contrast, Sanders did not propose anything novel. He simply asked the court to instruct the jury on the well-established doctrine of justification, based on his belief that the record contained substantial evidence to support this theory. *See State v. Sharkey*, 311 N.W.2d 68, 72 (Iowa 1981) ("[W]here the record does not contain substantial evidence of self defense the trial court is not obligated to instruct the jury on justification."). We believe that if there was substantial evidence of justification, the district court had no discretion to refuse the instruction. For that reason, we conclude our review is for errors of law. *See State v. Rains*, 574 N.W.2d 904, 915 (Iowa 1998) (reviewing district court's refusal to submit a requested jury instruction on justification for errors of law); *see also Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 160 (Iowa 2004) ("[A] trial court is generally required to give a requested instruction 'when it states a correct rule of law having application to the facts of the case.'" (citation omitted)); *State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004) (reviewing refusal to give spoliation instruction for errors of law, which the court characterized as "our typical review of alleged instructional error").

*State v. Sanders*, No. 10-0669, 2012 WL 1066487, at *2 (Iowa Ct. App. Mar. 28, 2012).

As noted in *Sanders*, the undeniable trend in the most recent cases is to apply an abuse-of-discretion standard to the refusal to give requested instructions. *Id.* For example:

> We review challenges to jury instructions for correction of errors at law." *State v. Frei*, 831 N.W.2d 70, 73 (Iowa 2013); *see also* Iowa R. App. P. 6.907. Yet, "[w]e review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006). Discretion is afforded the trial court in this instance because the decision involves an assessment of the evidence in the case. "When weighing sufficiency of evidence to support a requested instruction, we construe the evidence in a light most favorable to the party seeking submission." *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994). "'Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party.'" *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014) (quoting *Koenig v. Koenig*, 766 N.W.2d 635, 637 (Iowa 2009)). "'When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.'" *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)). "'Errors in jury instructions are presumed prejudicial unless "the record affirmatively establishes there was no prejudice."'" *Asher v. OB–Gyn Specialists, P.C.*, 846 N.W.2d 492, 496 (Iowa 2014) (quoting *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011)).

*State v. Guerrero Cordero*, 861 N.W.2d 253, 257-58 (Iowa 2015). *See also Asher*, 846 N.W.2d at 496 (stating standard of review is abuse of discretion); *State v. Miller*, 841 N.W.2d 583, 585-86 (Iowa 2014) (same); *Crawford v. Yotty*, 828 N.W.2d 295, 298 (Iowa 2013) (same); *Frei*, 831 N.W.2d at 73 (same).

Five things should be noted regarding the more recent precedents applying an abuse-of-discretion standard. First, the legal lineage of all the most recent precedents starts with *Piper*. Second, *Piper* does not state that the refusal

to give a requested instruction, generally, is reviewed for an abuse of discretion. Instead, *Piper* states only that review of the district court's "refusal to give an *inference instruction on alleged spoliation*" is for an abuse of discretion. *See Piper*, 663 N.W.2d at 914 (citing *Langlet*, 283 N.W.2d 330). Third, while the *Langlet* Court applied an abuse of discretion standard, it did so because of the unique policy considerations and other discretionary decisions inherent in determining whether a spoliation instruction should be given in a particular case. *See Langlet*, 283 N.W.2d at 335. Specifically, a spoliation instruction is a form of discovery sanction. *See* Iowa R. Evid. 1.517(3) (stating that a party that fails to provide discovery as required by our rules may be sanctioned by an order stating designated facts shall be taken to be established for the purposes of the action as set forth in rule 1.517(2)(b)). The imposition of a discovery sanction is discretionary and will only be reversed when that discretion has been abused. *See Suckow v. Boone State Bank & Trust Co.*, 314 N.W.2d 421, 425 (Iowa 1982). Fourth, *Langlet* did not state that the refusal to give a requested jury instruction, generally, is reviewed for an abuse of discretion. *See* 283 N.W.2d at 334-35. Thus, fifth and finally, the most recent precedents all ultimately rely on a single case that does not stand for the proposition for which it is cited.

"The above discussion reveals that our precedents in this area are not surefooted." *Rivera v. Woodward Res. Ctr.*, No. 14-0194, 2015 WL 3958720, at *10 (Iowa June 30, 2015). The unsteady nature of the post-*Piper* precedents is highlighted by the manner in which review is actually conducted. An abuse of discretion standard implicitly recognizes that a decision "is a judgment call on the

part of the trial court." *State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001). In other words, there is some play in the joints, and the reviewing court generally will not disturb the district court's decision unless it "is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree." *Pexa*, 686 N.W.2d at 160. However, controlling case law provides the district court does not have any discretion to refuse to instruct the jury on the applicable law. Instead, "[t]he district court must give a requested jury instruction if the instruction (1) correctly states the law, (2) has application to the case, and (3) is not stated elsewhere in the instructions." *Weyerhaeuser*, 620 N.W.2d at 823. Thus, in practice, because the "[p]arties are entitled to have their legal theories submitted to the jury if they are supported by the pleadings and substantial evidence in the record,'" *id.* at 823-24, we review the refusal to give an instruction for legal error. *See*, *e.g.*, *Hartsfield*, 681 N.W.2d at 633 (concluding there was substantial evidence to support the instruction and the district court erred in failing to give the requested instruction).

The lack of surefootedness of our post-*Piper* precedents is also demonstrated by the different standards of review applied to the district court's refusal to give a requested instruction and the district court's decision to give an instruction. In the former case, the standard of review is an abuse of discretion. In the latter case, the standard of review is for correction of legal error. Our most recent precedents state that abuse of discretion applies to the refusal to give an instruction "because the decision involves an assessment of the evidence in the case." *Guerrero Cordero*, 861 N.W.2d at 258. The distinction does not hold up.

*The process* of deciding whether or not to give a requested instruction always involves an assessment of the evidence in the case. *The conclusion* that a requested instruction should be refused or given based on the state of the evidence does not change the process by which the decision was made. Whatever conclusion is reached, the district court must make "an assessment of the evidence in the case" to determine whether the requested instruction "has application to the case."

For over 150 years, our courts have reviewed issues related to jury instructions for correction of legal error. *See*, *e.g.*, *Tyron v. Oxley*, 3 Greene 289, 290-91 (Iowa 1851). *Piper* created unnecessary confusion in the standard of review. If we were writing on a clean slate, we would adhere to the older line of authority holding that we review issues regarding jury instructions, including the decision to give or refuse an instruction, for correction of legal error. We are not writing on a clean slate, however. In the present case, we review the district court's refusal to give Tamco's requested instruction for an abuse of discretion, recognizing that the abuse of discretion standard is a subcategory of legal error, *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006) (stating that "any abuse of discretion necessarily results in legal error"), and that an erroneous application of the law constitutes an abuse of discretion. *See Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 244 (Iowa 2012).

## III.

"Negligence must be proved, and the mere fact that an accident has occurred, with nothing more, is not evidence." *Brewster v. United States*, 542

N.W.2d 524, 528 (Iowa 1996) (alterations, citation, and internal marks omitted). Negligence may be proved by circumstantial evidence. *See id.* "Res ipsa loquitur (Latin phrase for 'the thing speaks for itself') is one type of circumstantial evidence." *Id.* To be able to submit a case on the theory of res ipsa loquitur, there must be "substantial evidence that: (1) the injury was caused by an instrumentality under the exclusive control and management of the defendant, and (2) that the occurrence causing the injury is of such a type that in the ordinary course of things would not have happened if reasonable care had been used." *Banks*, 762 N.W.2d at 152. The doctrine is "of limited scope, ordinarily to be applied sparingly and with caution and only where the facts and demands of justice make its application essential." *Humphrey v. Happy*, 169 N.W.2d 565, 569 (Iowa 1969). We conclude the requested instruction is not supported by substantial evidence and the district court did not abuse its discretion in refusing the instruction.

Fire happens, frequently in the absence of negligence. *See Tedrow v. Des Moines Hous. Corp.*, 87 N.W.2d 463, 465 (Iowa 1958) (stating "[t]he mere happening of a fire with the resultant injuries raises no presumption of negligence."). "[F]or the doctrine of res ipsa loquitur to apply, plaintiff must establish the cause of the fire." *Wilson v. Paul*, 176 N.W.2d 807, 809 (Iowa 1970). In other words, the plaintiff must establish the instrumentality or agency causing the fire. The plaintiff must provide evidence showing its "theory of causation is reasonably probable, not merely possible, and more probable than any other theory based on such evidence." *Id.* (citation and internal quotation

marks omitted); *accord Nw. Nat'l Ins. Co. v. Raid Quarries Corp.*, 249 N.W.2d 640, 644 (Iowa 1977). However, "[i]t is not necessary for the testimony to be so clear as to exclude every other possible theory." *Wilson*, 176 N.W.2d at 809 (citation and internal marks omitted). Instead, the plaintiff is only required to provide substantial and competent evidence "that it was more likely than not negligence [caused] the event" to be allowed to submit a res ipsa loquitur instruction. *Banks*, 762 N.W.2d at 153.

There is not substantial evidence in this record establishing the instrumentality or agency causing the fire. Tamco hired three experts to opine on the issue: fire investigator George Howe; electrical engineer Todd Hartzler; and mechanical engineer Duane Wolf. Howe could testify only that the evidence was consistent with a propane fire, but he could not provide an opinion as to the cause and origin of the fire:

> Q. What is [the fact that the fire started quickly] most consistent with? . . . Is that *most consistent* with propane? A. *It would certainly be consistent* with propane, yes.

(Emphasis added). After being asked if he could identify the fire's origin, Howe testified:

> A. I can't, no. I don't feel I can. I can't point to a room. I can't point to the hallway and say, this is definitely the room of fire origin.
> Q. Well, not definitely. More probable than not? A. I can't show you that either.

Howe was also unable to form an opinion regarding the ignition source of the fire:

> Q. My understanding is that you can't say what the ignition source is to any degree of certainty? A. That would be true.
> Q. You have not identified the ignition source. A. No. Just what I thought was more probable.

Q. Okay. And you can't say where the fire originated beyond several various hypotheses? A. That's correct.

Because of the extensive fire damage to the building, the other experts could fare no better. Hartzler opined that he did not believe this was an electrical fire, but he could not exclude certain electrical circuits as potential causes. He testified that he "really cannot comment on whether [small branch circuitry] did or did not cause the fire." Wolf, a mechanical engineer, believed the fire was consistent with a propane-fed fire, but he could not form an opinion regarding the cause or origin of the fire. He ultimately concluded there was not enough evidence to establish that with any certainty:

> We believe [the gas] made entry into this room, but what was on the end of that piping, we just don't know whether there was a valve there, whether that valve was open or closed, whether there was a cap on the end of that line to prevent the escape of gas if that valve did intentionally or inadvertently get turned on. We just don't know. There was . . . insufficient physical evidence . . . to offer an opinion how that was piped.

Wolf further testified that he did not know what started the fire and that he could not form an opinion regarding the ignition source.

> Q. As I understand it, you don't have any independent opinion as to ignition sources? A. No.
> Q. [Y]ou would agree that it's certainly possible that one or more of these so-called missing pieces of the propane system that were in the northeast room were just straight away consumed by the fire; correct? A. It's [certainly] possible.

Tamco contends that the instrumentality or agency causing the fire can be inferred from the mere fact of injury and that it thus need not identify the instrumentality or agency causing the fire to establish an entitlement to the res ipsa loquitur instruction. For this proposition, Tamco relies on *Clinkscales v.*

*Nelson Securities., Inc.*, 697 N.W.2d 836, 847 (Iowa 2005). In that case, the court stated "[r]es ipsa loquitur permits a jury to circumstantially 'infer the cause of the injury from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence.'" *Clinkscales*, 697 N.W.2d at 847 (quoting *Benedick v. Potts*, 40 A. 1067, 1069 (Md. 1898)). *Clinkscales* and several other Iowa cases have quoted *Benedick v. Potts* for the proposition for which Tamco cites it,[1] but the quotation is incomplete and out of context. The quoted language in *Benedick* is that court's description of the plaintiff's argument in support of the res ipsa loquitur instruction, which that court soundly rejected:

> In no instance can the bare fact that an injury has happened—of itself, and divorced from all the surrounding circumstances—justify the inference that the injury was caused by negligence. It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference, and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them. This principle is never departed from, and, in the very nature of things, it never can be disregarded. There are instances in which the circumstances surrounding an occurrence, and giving a character to it, are held, if unexplained, to indicate the antecedent or coincident existence of negligence as the efficient cause of an injury complained of. These are the instances where the doctrine of res ipsa loquitur is applied. This phrase, which, literally translated, means that "the thing speaks for itself," is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident; and the doctrine which it embodies, though correct enough in itself, may be said to be applicable to two classes of cases only, viz.: "First, when the relation of carrier and passenger exists, and the accident arises

---

[1] *See, e.g.*, *Conner v. Menard, Inc.*, 705 N.W.2d 318, 320 (Iowa 2005); *Brewster*, 542 N.W.2d at 529.

from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is, in its very nature, so obviously destructive of the safety of person or property, and is so tortious in its quality as, in the first instance, at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency." But it is obvious that in both instances more than the mere isolated, single, segregated fact that an injury has happened must be known. The injury, without more, does not necessarily speak, or indicate the cause of that injury. It is colorless. But the act that produced the injury, being made apparent, may, in the instances indicated, furnish the ground for a presumption that negligence set that act in motion. *The maxim does not go to the extent of implying that you may, from the mere fact of an injury, infer what physical act produced that injury; but it means that when the physical act has been shown, or is apparent, and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn, as a legitimate deduction of fact. It permits an inference that the known act which produced the injury was a negligent act, but it does not permit an inference as to what act did produce the injury. Negligence manifestly cannot be predicated of any act until you know what the act is. Until you know what did occasion an injury, you cannot say that the defendant was guilty of some negligence that produced that injury. There is therefore a difference between inferring, as a conclusion of fact, what it was that did the injury, and inferring from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury.* To the first category the maxim, "Res ipsa loquitur," has no application. It is confined, when applicable at all, solely to the second*. In no case where the thing which occasioned the injury is unknown has it ever been held that the maxim applies, because, when the thing which produced the injury is unknown, it cannot be said to speak, or to indicate the existence of causative negligence. . . . It follows, of course, that, when the act that caused the injury is wholly unknown or disclosed, it is simply and essentially impossible to affirm that there was a negligent act; and neither the doctrine of res ipsa loquitur, nor any other principle of presumption, can be invoked to fasten a liability upon the party charged with having by negligence caused the injury for the infliction of which a suit has been brought.*

Now, in the case at bar[,] . . . [i]t is a case presenting not a single circumstance showing how, or by what agency, the injury occurred, and in which, with nothing but the isolated fact of the injury having happened being proved, it is insisted that the jury shall be allowed to speculate as to the cause that produced it, and then to infer from the cause thus assumed, but not established, that

there was actionable negligence. *It is not an attempt to infer negligence from an apparent cause, but to infer the cause of the injury from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence. . . . No case has gone to that extent, and no known principle can be cited to sanction such a position. There has been no circumstance shown which furnishes the foundation for an inference of negligence, and the circumstances which have been shown obviously do not bring the case within the doctrine of res ipsa loquitur.*

*Benedick,* 40 A. at 1068-70 (emphasis added). *Benedick*, properly quoted in context, is wholly consistent with our cases involving the application of res ipsa loquitur to a fire. *See, e.g.*, *Wilson*, 176 N.W.2d at 809 ("The doctrine of res ipsa loquitur does not raise any inference as to what did occasion the injury; but, after the evidence has established the thing which did occasion the injury, then under certain circumstances, this doctrine will raise an inference of negligence.").

Our cases uniformly hold that a plaintiff is not entitled to the res ipsa loquitur instruction without first establishing the instrumentality causing the injury was in the exclusive control or management of the defendant. *See, e.g.*, *Banks*, 762 N.W.2d at 152. That requirement cannot be satisfied where there is no evidence establishing the instrumentality or agency causing the injury. Thus, where, as here, the cause or instrumentality giving rise to the injury is unknown, the doctrine of res ipsa loquitur is simply inapplicable. *See Highland Golf Club v. Sinclair Ref. Co.*, 59 F. Supp. 911, 919 (N.D. Iowa 1945) (finding the doctrine of res ipsa loquitur was inapplicable where cause and origin of fire was undetermined), *superseded by statute*, Comparative Fault Act, Iowa Code chapter 668; *Raid Quarries Corp.*, 249 N.W.2d at 645 ("'Plaintiff . . . requires evidence of the precise cause of the blaze.'"); *Wilson*, 176 N.W.2d at 809

(requiring plaintiff to establish the cause of the fire in order for the doctrine of res ipsa loquitur to apply); *Tedrow*, 87 N.W.2d at 466-67 (finding plaintiff did not establish cause of fire and res ipsa loquitur doctrine was inapplicable); *Dodge v. McFall*, 45 N.W.2d 501, 502-03 (Iowa 1951) (holding the res ipsa loquitur doctrine was inapplicable where the record was devoid of evidence as to how the dance hall burned down).

We also conclude there was not substantial evidence that the unknown instrumentality giving rise to the injury was under the exclusive control and management of the defendants. The purpose of the exclusive control and management requirement is to "link the defendant with the probability, already established, that the accident was negligently caused. Failure to connect the defendant with the negligent event defeats the application of res ipsa loquitur." *Brewster*, 542 N.W.2d at 528-29 (citations and internal quotations omitted). "Notwithstanding the 'exclusive control' language, a plaintiff relying on res ipsa loquitur need not prove that the defendant had control of the instrumentality when the injury occurred. The plaintiff need only show that the defendant controlled the instrumentality at the time of the alleged negligent act." *Weyerhaeuser*, 620 N.W.2d at 832 (citation and emphasis omitted). "Additionally, the plaintiff must show by a preponderance of the evidence . . . that (1) there was no change in the condition of the instrumentality, and (2) no intervening act that could have caused the event resulting in the injury." *Id.* As noted above, the lack of evidence from which the instrumentality or act causing the fire could be inferred necessarily leads to the conclusion there is a lack of evidence the unidentified instrumentality

was under "the exclusive control and management" of the defendants. *See id.* ("The 'exclusive control' requirement is simply another way of saying that the injury must be traced to a specific instrumentality or cause for which the defendant was responsible.").

In addition to the above-stated deficiency, Tamco's argument that Heartland and Pro Build exercised concurrent or joint control over a single "propane system" is unavailing. Joint or concurrent control has been applied only in medical malpractice cases or cases based in part on vicarious liability. *See Wick v. Henderson*, 485 N.W.2d 645, 650 (Iowa 1992); *Verwers v. Rhoades*, No. 08-1149, 2009 WL 1212726, at *3 (Iowa Ct. App. May 6, 2009) ("Specifically with regard to medical malpractice cases, our supreme court has stated that the control requirement may be satisfied by concurrent or joint control."). Neither is applicable here. Further, there is no evidence Heartland and Pro Build exercised exclusive control or management over a single "propane system." Tamco contracted directly with Heartland and Pro Build for different projects. Heartland was to perform exterior work related to delivering propane from the source tank to the exterior of the buildings. Pro Build was hired to build the interior infrastructure necessary to deliver propane from the exterior wall to the interior heaters and devices. Here, the defendants had independent responsibility for separate instrumentalities. Tamco's attempt to characterize the defendants' work as joint control of a single "propane system," would be akin to concluding a utility company responsible for delivering power to a home and an electrician fixing a broken outlet inside the home had joint control over an "electrical system" and

were both liable for a fire speculated to have been caused by an unidentified electrical problem. No case goes that far. *See Town of Reasnor v. Pyland Constr. Co.*, 229 N.W.2d 269, 272 (Iowa 1975) ("A special problem is faced by a plaintiff who seeks to apply the doctrine against multiple defendants. Unless there is vicarious liability or shared control, the logical rule usually is applied, that the plaintiff does not make out a preponderant case against either of two defendants by showing merely that he has been injured by the negligence of one or the other."); *Humphrey*, 169 N.W.2d at 569 ("If it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the [res ipsa loquitur] doctrine cannot be invoked."). We decline to do so here.

Tamco argues that this court should adopt the Restatement (Third) of Torts section 17, which sets forth the Restatement's formulation of the res ipsa loquitur doctrine, and that it would have been entitled to the instruction under the Restatement. We first note that Iowa has not yet even adopted the Restatement (Second) of Tort's formulation of the doctrine. *See Town of Reasnor*, 229 N.W.2d at 273 (noting the res ipsa doctrine as applied in Iowa is at variance with the Restatement (Second) in several respects). We also note that other than its mere assertion that adoption of the Restatement would make a difference in this case, Tamco has not explained how or why adoption of the Restatement would lead to a different outcome. We decline to make the argument on behalf of Tamco. Further, we conclude the district court did not abuse its discretion in

failing to give an instruction not supported by the evidence under the controlling case law.

IV.

For the above-stated reasons, we affirm the judgment of the district court.

**AFFIRMED.**