**IN THE COURT OF APPEALS OF IOWA**

No. 14-1566
Filed December 9, 2015

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**DALE VARNER,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.

       Dale Varner appeals his conviction and sentence for homicide by vehicle

following a jury trial. **AFFIRMED.**

       Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg,

Assistant Appellate Defender, for appellant.

       Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant

Attorney General, for appellee.

       Considered by Doyle, P.J., Tabor, J., and Miller, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DOYLE, Presiding Judge.**

Dale Varner appeals from the judgment and sentence entered following a jury verdict finding him guilty of homicide by vehicle, in violation of Iowa Code section 707.6A(2)(a) (2011). He asserts there was insufficient evidence to support his conviction and that the district court erred in denying his objection to the "alternative course of action" jury instruction. We affirm.

### I. *Background Facts and Proceedings*.

"Viewing the trial evidence in the light most favorable to the jury's guilty verdict[]," *State v. Romer*, 832 N.W.2d 169, 172-73 (Iowa 2013), the jury could have found the following facts.

Around 4:20 a.m. on September 22, 2012, twenty-three-year-old Martin Eason was killed when Varner ran him over with his car. Varner had been driving to his mother's house to drop off his two children for babysitting before he went to work. The children, then ages four and six, were sitting in the backseat of his car.

In his interview with an officer shortly after the incident, Varner gave this account of the events prior to the collision:

> Well I . . . come up. I turn left, and I'm going up. And as I'm getting up towards the stop-sign, this—I-I think he's black—guy comes up from—there's a fence at the corner house. He comes right over from that fence and comes up and stands right in my lane. He's got his arms like this [gesturing], and he's, you know. And so I hit the gas a little bit to get him to move out of the way. Well, he don't move, and right at the last minute, he was trying to dodge, and I tried to dodge a little bit, but it's too late. But I—he was—he was threatening me, the way that he was doing this [gesturing], and, you know, not even trying to get out of the street. He was walking

towards me the whole time. I thought he was going to pull out a gun—I've got my little kids in the car, you know.[1]

Varner told the officer he did not know if Eason had been saying anything because his windows were rolled up, and he did not remember if Eason's mouth had been moving. Varner believed Eason was ten to fifteen feet ahead of him before Varner "hit the gas," but Varner did not just "gun it" right away, explaining: "I was just going normal and then he just kept standing there, kept standing there. Right at the end, you know, my car's kind of loud, so I gunned it, you know, figured you'll move out of the way, and you don't know how people are any more." The officer asked Varner to explain Eason's gesturing again, and Varner made the same movements as before, stating Eason's arms were out and he was gesturing in a "very aggressive" way "like he wanted to fight." Varner told the officer: "I feared for mine and my children's lives the way he was doing it; I thought it—something bad was going to happen. . . . Something real bad was going to happen," like Eason

> was going to either jack my car or I mean, maybe kill and then take my car, I have no idea, but it was going to be bad. You don't just start walking down a street towards a car that's coming at you unless something's wrong, something bad is going to happen. He had plenty of opportunities to get out of the way, and he didn't.

After Varner accelerated and struck Eason, Varner "realized [Eason] was stuck up underneath the car, tried backing up to get him out, and . . . stopped and started calling the cops."

---

[1] The State offered as exhibits various recordings, including Varner's interview, but they were not transcribed. We rely on our own opportunity to listen to the recordings in quoting the statements in the recordings. We have omitted the short, non-substantive responses given by the officer in response to Varner's statements in this part of the recording.

Varner told the 9-1-1 operator he had "just hit some guy, just jumped right out, you know, the street in front of me, and he's underneath my car." An undercover police officer happened to drive by, saw Varner's car stopped in the roadway with its flashers on, and stopped to ask if everything was okay. While still on the phone with 9-1-1, Varner told the officer he was "freaking out." The officer noticed a foot was sticking out from under the back of Varner's car and immediately called dispatch and related the information, seeking emergency and fire personnel. The officer looked under Varner's car with a flashlight and observed Eason had a large head wound. Eason was pronounced dead at the scene. Eason died as a result of multiple blunt force injuries, and he had more than one injury which could have potentially caused his death.

Eason, over six-feet tall and weighing more than 200 pounds, had been wearing a black hoodie, black jeans, and boots. Unknown to Varner, Eason had been out drinking with friends, and he was walking home very intoxicated. The toxicology testing on Eason's blood samples from the autopsy revealed alcohol at a level of 0.21 percent. Eason was unarmed.

By amended and substituted trial information, Varner was charged with voluntary manslaughter and homicide by vehicle. He asserted a defense of justification based on self-defense and defense of others.

Varner's jury trial commenced in 2014. The district court granted Varner's motion for directed verdict on the voluntary manslaughter count, finding the evidence presented by the State failed to support the necessary elements of that crime. *See* Iowa Code § 707.4(1) (setting forth elements). The court submitted to the jury the lesser included offense of involuntary manslaughter. *See id.*

§ 707.5(1)(b). The homicide by vehicle count was also submitted to the jury. *See id.* § 707.6A(2)(a). During its deliberation, the jury sent the court a note that it "need[ed] elaboration" on the justification instruction. The court responded and told the jury it should "reread the instructions [as] submitted." The jury subsequently returned its verdict finding Varner guilty of homicide by vehicle and not guilty of involuntary manslaughter.

Varner now appeals.

## II. Discussion.

On appeal, Varner asserts there was insufficient evidence to support his conviction. He also argues that the district court erred in denying his objection to the "alternative course of action" jury instruction. We address his arguments in turn.

### A. Sufficiency of the Evidence.

"We review sufficiency-of-evidence claims for correction of errors at law." *State v. Rooney*, 862 N.W.2d 367, 371 (Iowa 2015). In our review, we

> "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. [W]e will uphold a verdict if substantial record evidence supports it. We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*State v. Edouard*, 854 N.W.2d 421, 437 (Iowa 2014) (alteration in original) (citation omitted).

### *1. Recklessness.*

The elements of homicide by vehicle set forth in the district court's marshaling instruction in the present case were as follows:

> 1. On or about the 22nd day of September, 2012, [Varner] drove a motor vehicle in a reckless manner.
> 2. [Varner's] recklessness unintentionally caused the death of Martin Eason.

*See also* Iowa Code § 707.6A(2)(a). The instructions set out the following definitions:

> A person is "reckless" or acts "recklessly" when he willfully disregards the safety of persons or property. It is more than a lack of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act. Though recklessness is willful, it is not intentional in the sense that harm is intended to result.
> . . . .
> Reckless Driving is defined as: Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property.

Varner first argues the State failed to prove the "reckless" elements of the crime, asserting:

> There is nothing in the record to show that [he] was driving his car recklessly. He was not speeding, was entirely in his lane, and did not break any traffic laws. All of the evidence indicates that he was in fear for his safety and the safety of his children, which is why he acted the way he did. He was not acting in a way that disregarded the safety of others. To the contrary, he was protecting his safety and that of his children.

However, this issue was for the jury to decide. *See State v. Rohm*, 609 N.W.2d 504, 511 (Iowa 2000); *State v. Davis*, 196 N.W.2d 885, 891 (Iowa 1972).

Here, it is undisputed that Varner intentionally "hit the gas" and accelerated his vehicle towards, and ultimately into and over, another person. "Jurors do not abandon their common knowledge about the affairs of the world when they enter the jury box," nor are they "expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life." *State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974) (citations and internal quotation marks omitted). Rather, they are permitted to "give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved." *Id.* (citations and internal quotation marks omitted). It is common knowledge that automobiles can be dangerous and deadly instrumentalities. *See Scott v. Wright*, 486 N.W.2d 40, 43 (Iowa 1992) (explaining the owner consent statute, which holds the automobile owner liable for accidents caused by those driving the owner's car with the owner's consent, "was enacted over seventy years ago upon the recognition that 'an automobile is a dangerous instrumentality'"); *State v. Oldfather*, 306 N.W.2d 760, 763-64 (Iowa 1981) (stating it "is clear that an automobile, if it is used in such a manner as to indicate an intent to inflict death or serious injury, may be a 'dangerous weapon'"). There is no question Varner's action was intentional and highly dangerous. Likewise, a reasonable jury could find a driver of an automobile knows or should have reasonably foreseen that accelerating into a person would more likely than not result in harm to that person. The jury could also find Varner's action was clearly done without regard to Eason's safety. Considering all of the record evidence viewed in the light most favorable to the State, and including all reasonable inferences that may be fairly drawn from the

evidence, there was substantial evidence for a jury to find beyond a reasonable doubt that Varner drove his car in a reckless manner, which caused Eason's death.

### 2. *Justification.*

Varner also asserts the State failed to prove beyond a reasonable doubt that he did not act with justification. "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself . . . from any imminent use of unlawful force." Iowa Code § 704.3. However, the State may rebut this defense if it proves beyond a reasonable doubt that the person was not justified in his or her actions. *See State v. Begey*, 672 N.W.2d 747, 752 (Iowa 2003). Specifically, a defendant's actions are not justified if the State proves any one of the following elements, including that the defendant: had available an alternative course of action; did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him; did not have reasonable grounds for the belief; or used unreasonable force. *See State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). Like recklessness, the determination of whether a defendant's actions were justified is a question for the jury. *See State v. Lawler*, 571 N.W.2d 486, 489-90 (Iowa 1997); *State v. Beyer*, 258 N.W.2d 353, 357 (Iowa 1977).

Viewing the evidence in the light most favorable to the State, we conclude the jury could have found the State proved any of the four elements supporting lack of justification set forth above. Here, Varner and his children were in his car; Eason was on foot. Assuming without deciding Varner had a reasonable belief that Eason had a gun, Varner still had multiple avenues available to him other

than running Eason over. As the State pointed out at trial, there was little traffic that early in the morning, and the accident occurred at a three-way stop. Varner could have gone around Eason, turned left away from Eason, or backed up. A jury could have found the State proved Varner had available to him an alternative course of action.

Similarly, the jury could have found the State proved Varner did not believe he was in imminent danger of death or injury. The State's accident reconstructionist opined Eason was not facing the front of Varner's vehicle based upon the lack of evidence on the hood of Varner's car. No weapons were found on Eason's person. And even if the jury found Varner did believe he and his children were in imminent danger of death or injury, the jury still could have found Varner's belief was unreasonable under the facts of the case. The jury could have found the gestures Varner stated Eason had made were non-threatening or not threatening enough to support an objective reasonable belief of imminent danger of death or injury. Particularly in light of the fact Varner and his children were in a car, while Eason was on foot.

Finally, even if the jury found Eason's belief he and his children were in imminent danger of death or injury was reasonable, it still could have concluded the force used by Varner was unreasonable. Varner decided to accelerate his car toward Eason rather than go around. Eason was only ten to fifteen feet away from Varner's car when Varner "hit the gas." Based on our review of the record in the light most favorable to the verdict, we find substantial evidence to uphold Varner's conviction of homicide by vehicle.

### B. *Jury Instructions.*

Varner also raises claims concerning the jury instructions. Relevant here, the alterative-course-of-action instruction given to the jury stated:

> [I]f a defendant is confronted with the use of unlawful force against him, he is required to avoid the confrontation by seeking an alternative course of action before he is justified in repelling the force used against him. However, there is *an exception.*
> If the defendant was in his own home . . . or property which he was legally occupying and the alternative course of action was such that he reasonably believed he had to retreat or leave his position to avoid the confrontation, then he was not required to do so and he could repel force with reasonable force including deadly force.
> If the alternative course of action involved a risk to his or another's life or safety, and he reasonably believed that, then he was not required to take or use the alternative course of action to avoid the confrontation, and he could repel the force with reasonable force including deadly force.

(Emphasis added.) Additionally, the "apparent-danger" instruction stated:

> [Varner] claims danger existed. You are to consider the danger or apparent danger of harm to [Varner] or his children from the viewpoint of a reasonable person under the circumstances which existed at that time.
> It is not necessary that there was actual danger, but [Varner] must have acted in an honest and sincere belief that the danger actually existed. Apparent danger with knowledge no real danger existed is no excuse for using force.

As to "reasonable grounds for the belief," the jury was instructed:

> [Varner] was not required to act with perfect judgment. However, he was required to act with the care and caution a reasonable person would have used under the circumstances which existed at that time.
> If in [Varner's] mind the danger to himself or his children was actual, real, imminent, or unavoidable, even though it did not exist, that is sufficient if a reasonable person would have seen it in the same light.

Based upon these instructions, Varner argues the alterative-course-of-action instruction stated above misstated the law because it "required the jury to

find there was actual danger to [Varner], not just apparent danger, in order for [Varner] to be justified in not seeking an alternative course of action." He also argues that instruction misstated the law in stating there was "an exception" when there were two exceptions. He concedes the latter issue was not preserved at trial and asserts the matter here as an ineffective-assistance-of-counsel claim.

We ordinarily review jury-instruction challenges for correction of errors at law. *See Edouard*, 854 N.W.2d at 431. However, we review the related claim—that the district court should have given a requested instruction—for an abuse of discretion. *See id.; but see Tamco Pork II, LLC v. Heartland Co-op*, No. 14-0412, 2015 WL 4481571, at *2-5 (Iowa Ct. App. July 22, 2015) ("There is a lurking inconsistency in our law regarding the scrutiny applied to the district court's refusal to give a requested jury instruction."). Reversal for an error in giving or refusing to give a jury instruction does not merit reversal unless it results in prejudice to the complaining party. *State v. Guerrero Cordero*, 861 N.W.2d 253, 258 (Iowa 2015). "The requirement that a jury instruction error result in prejudice before a conviction will be reversed mirrors the harmless-error analysis this court undertakes for any alleged error in a criminal trial." *State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010). Where an error in the jury instructions is not of constitutional magnitude, the reviewing court asks whether "it sufficiently appear[s] that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice." *Id.* If the instruction "could reasonably have misled or misdirected the jury," prejudice exists. *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015).

An ineffective-assistance-of-counsel claim is reviewed de novo and requires a defendant to prove both that his trial counsel failed to perform an essential duty and that failure resulted in prejudice. *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). We can reject the ineffective-assistance claim if the defendant fails to establish either a breach of duty or prejudice. *See id.*

### 1. *Alternative Course of Action and Actual Danger.*

At trial and here, Varner takes specific issue with the following language in the alternative-course-of-action instruction: "If the alternative course of action involved a risk to his or another's life or safety, and he reasonably believed that . . . ." He argues this language "required the jury to find there was an actual danger to [him], not just an apparent danger." He instead requested the jury be instructed that if he "lawfully believed that the alternative course of action involved a risk to his, another's life, or safety, and his belief was reasonable, then he was not required to take or use the alternative course of action to avoid confrontation." Thus, he argues the instruction should specifically look only at a defendant's subjective belief, not the belief of a reasonable person. Though a close call, we disagree.

Iowa Code section 704.1 sets forth part of the legal elements of a justification defense. *See State v. Frei*, 831 N.W.2d 70, 75 (Iowa 2013). That section states:

> "Reasonable force" is that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat. *Reasonable force, including deadly force, may be*

*used even if an alternative course of action is available if the alternative entails a risk to life or safety, or the life or safety of a third party, or requires one to abandon or retreat from one's dwelling or place of business or employment.*

Iowa Code § 704.1 (emphasis added). In interpreting and applying the justification statutes, the Iowa Supreme Court has explained "the test of justification is both subjective and objective. The actor must actually believe that he is in danger and that belief must be a reasonable one." *Frei*, 831 N.W.2d at 74.

Here, section 704.1 does not state "force . . . may be used even if an alternative course of action is available if [*the actor believes*] the alternative entails a risk to life or safety." Consequently, the statute contemplates an objective standard on this issue—whether a reasonable person would believe the alternative course of action entailed a risk. This interpretation makes sense, given that no more force than that is deemed necessary may be used. We conclude the language of the instruction properly stated the law. Consequently, the district court did not abuse its discretion in not changing the language of the instruction to that requested by Varner.

### 2. Exceptions.

Varner also asserts, by way of an ineffective-assistance-of-counsel claim, that the alternative-course-of-action jury instruction was a misstatement of the law, because the instruction singularly stated there was "an exception," when, in fact, there were two exceptions given in the instruction.[2] Although the exceptions

---

[2] Though we often times preserve ineffective-assistance-of-counsel claims for postconviction relief proceedings, we need not if we find the record adequate to address

were not separated by an "or," they were set forth in separate paragraphs. Reading the instruction, as stated above, it is clear that though the plural "exceptions" was not used, the jury would not have found the phrasing confusing. Each paragraph separately indicated that if the jury found the requirement set forth in the paragraph, Varner was not required to take or use the alternative course of action to avoid the confrontation, "and he could repel the force with reasonable force including deadly force." Considering all of the jury instructions as a whole, we do not believe that the failure to state in the plural "exceptions" could have reasonably misled or misdirected the jury. Consequently, there is no reversible error. *See Hanes*, 790 N.W.2d at 551 ("Our analysis of prejudice is also influenced by an evaluation of whether a jury instruction could reasonably have misled or misdirected the jury."). Because counsel has no duty to raise a meritless claim, *see State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015), Varner has failed to establish his counsel was ineffective.

Additionally, we question whether the first exception, which stated it applied if Varner "was in his own home . . . or property which he was legally occupying," should have been given at all. As indicated above, section 704.1 specifically states one does not have "to abandon or retreat from one's dwelling or place of business or employment," even if there is an alternative course of action. It does not reference one's automobile. *See* Iowa Code § 704.1. As some sources have indicated, "[t]he freedom from the duty to retreat does not apply to an automobile or vehicle." 2 Charles E. Torcia, *Wharton's Criminal Law*

---

the issue. *See State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). We find the record here sufficient to address the issue.

§ 128 (15th ed. 2015); *see also Weaver v. State*, 44 So. 2d 773, 774 (Ala. Ct. App. 1950) ("The occupant of his automobile, by reason of this fact solely, is not relieved of the duty to retreat as that element is applied to the doctrine of self defense. Our courts have not extended the rule to apply to automobiles or other vehicles."); 40 C.J.S. *Homicide* § 222 (2015) ("A defendant's automobile cannot be equated with his or her home, and thus the defendant has a duty to retreat from a confrontation."); 4 Robert R. Rigg, *Iowa Practice Series: Criminal Law* § 2:27 (noting the alternative-course-of-action exception "does not apply if the individual is in their dwelling or place of business or employment") (Westlaw 2015). As one court pointed out, the "very mobility of an automobile . . . may connote the inherent usefulness of an automobile under certain circumstances for a retreat from a self-defense confrontation." *See Baker v. State*, 506 So. 2d 1056, 1059 (Fla. Dist. Ct. App. 1987), *supersession recognized in Smiley v. State*, 966 So. 2d 330 (Fla. 2007). Another appellate court affirmed its trial court's refusal to even submit a self-defense instruction where the defendant ran over "the aggressor," because the court "found no reasonable person in [the defendant's] shoes would have acted as she did." *State v. Larkins*, no. 45276-6-II, 2015 WL 2025264, *6-7 (Wash. Ct. App. Apr. 28, 2015). That court reasoned:

> A defendant may only use as much force in self-defense as "what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." Deadly force may be used only if the defendant reasonably believes that he or she is threatened with death or great personal injury. If placed in the situation [the defendant] faced, no reasonably prudent person would have believed himself or herself to be in imminent danger of death or great personal injury. Nor would any reasonably prudent person have believed it necessary to strike [the "aggressor"] with the automobile to defend against the perceived danger in these circumstances. Although [the defendant] believed that [the

"aggressor"] possessed a gun and had been digging in her purse while walking, [the "aggressor"] was not brandishing a gun or threatening [the defendant] with a gun. In fact, [the defendant] never saw [the "aggressor"] with a gun. . . . The objective test for self-defense is not met here. Therefore, we hold that the trial court did not err by denying [the defendant] a self-defense instruction.

*Id.* (internal citations omitted). In any event, Varner was given the benefit of the instruction here, and we do not believe the instruction was prejudicial. Accordingly, we find Varner failed to establish his trial counsel rendered ineffective assistance.

### *III. Conclusion.*

The jury was tasked with determining whether Varner's actions were justified under the circumstances of the case. In weighing this evidence, the jury could have concluded that Varner acted out of fear for his safety and his fear was reasonable, but it was by no means compelled to so conclude. It determined Varner was not guilty of involuntary manslaughter but was guilty of homicide by vehicle. We decline to substitute our judgment for that of the jury and hold that sufficient evidence was introduced at trial to sustain Varner's conviction. We also find the instructions given were correct statements of the law and not so confusing to be prejudicial to Varner. We accordingly affirm his conviction and sentence for homicide by vehicle.

**AFFIRMED.**